The Circuit Judge rendered an opinion in writing disposing of this case in the court below, as follows:
"This cause came on to be heard before me upon the final hearing, and at the conclusion of the evidence for the Plaintiffs, the Defendants moved the Court to dismiss the bill of complaint.
"The Plaintiffs brought this suit on behalf of themselves and all other parties standing in a similar relation, and alleged that they are the owners of a certain tract of land situated in the City of St. Petersburg and subject to taxation by the City, but they contend that in the taxing of said land the City has violated the constitutional provisions requiring the uniformity and equality of taxation.
It is apparent from reading the pleadings in the cause that in levying taxes for municipal purposes, the City of St. Petersburg imposes a uniform rate of taxation throughout the City for the purpose of operating the municipal government, but that for the payment of the debts of the City, the City has been divided into four zones. *Page 837 
"Zone 1 is that certain territory defined by Chapter 6772 of the Special Acts of 1913 together with certain additional territory attempted to be annexed to the City pursuant to Chapter 3163, Acts of 1879, as amended by Chapter 5197, Acts of 1903 (C. G. L. 1927 Sections 3048-3053).
"Zone 2 embraces that certain territory attempted to be annexed to the City pursuant to Chapter 5464, Acts of 1905 (C. G. L. 1927, Sections 3054, et seq.).
"Zone 3 embraces certain territory subsequently attempted to be annexed to the City pursuant to Chapter 5464, Acts of 1905 (C. G. L. 1927, Sections 3054, et seq.), and
"Zone 4 is that certain territory attempted to be annexed to the City pursuant to Ordinance No. 470-A, which purports to have been adopted pursuant to Section 1918 R. G. S. (Section 3051 C. G. L.) and more specifically set out and defined in the case of: State, ex rel., Keefe, et al., v. City of St. Petersburg, et al., reported in 144 So.2d 671.
"In the case just mentioned the Supreme Court of this State held that while Zone 4 purported to have been annexed under Section 1918 R. G. S. that as a matter of fact said section was not applicable to the City of St. Petersburg because the City was, at the time of said annexation, a City of over 10,000 inhabitants and that being a city of more than 10,000 inhabitants it came within the purview of Section 3054 C. G. L., supra. These different Zones of the City were fully discussed by the Supreme Court in the case of Keefe v. City,supra, and also the case of: State, ex rel., Keefe v. City of St. Petersburg, 144 So.2d 313, and it is unnecessary to go into a discussion of these matters now. It is sufficient to say that in Zones 2, 3, and 4, the City only levies a tax to pay debts incurred after said Zones were annexed to the City and none of the property or inhabitants *Page 838 
in said Zones are taxed to pay any of the debts of the City which were incurred prior to the respective annexations.
"The bill of complaint alleges, and it is admitted, that the land of Plaintiffs is located in Zone 1 and is embraced in certain territory attempted to be annexed to the City pursuant to an ordinance adopted under Chapter 3163, Acts of 1879, as amended by Chapter 5197, Acts of 1903, now embraced in C. G. L. 1927, Sections 3048-3053, which said annexations took place in the year 1914.
"Plaintiffs contend, and it is admitted, that at the time of the supposed annexation in 1914, the City was indebted on bonds in the sum of approximately $1,000,000.00, the exact amount being immaterial for the purpose of this opinion, and the Plaintiffs further contend that if the practice or custom established by the City for the imposition of taxes in Zones 2, 3 and 4, relating to debt service, is legal, that it should be applied to Zone 1 and that the property of Plaintiffs should not be taxed to pay the debts of the City which were in existence at the time of the attempted annexation of Plaintiffs' land to the City by ordinance in 1914, and they seek to have the tax sale enjoined and ask for other relief.
"The Plaintiffs contend that the Ordinance adopted by the City attempting to annex their lands to the City was illegal and void ab initio and they assign two reasons for this contention:
"1. That at the time of the attempted annexation, they allege that the City was a City of more than 10,000 inhabitants and that in no event could said annexation have been made except pursuant to Chapter 5464, Acts of 1905 (3054, et seq., C. G. L. 1927).
"2. That at the time of the adoption of the ordinance attempting to annex their property to the City, that the *Page 839 
City of St. Petersburg was existing under a Special Act of the Legislature (Chapter 6772, Acts of 1913) and that the boundaries of the City could not be enlarged except by Act of the Legislature.
"With reference to the first proposition, the Court judicially knows that the Federal census of 1910 gave the City of St. Petersburg a population of approximately 4,900 and the State census of 1915 gave said city a population of 7,186, and the evidence for the Plaintiffs shows that it had a larger population in 1915 than it did have in 1914, but in any event the Court will take judicial cognizance of the fact that the City of St. Petersburg did not have a population of 10,000 inhabitants in 1914.
"The second proposition has been more difficult to determine, but the Court is of the opinion that the attempted annexation in 1914 by ordinance did not serve to annex the territory attempted to be annexed to the City so as to make the same a part of the City de jure, but the Legislature of Florida, Chapter 13374, Special Acts of 1927, specifically validated all ordinances passed and elections held and all acts performed, steps taken and things done in extending the limits of the City to the boundaries set forth in that Act, which are the same boundaries of the City as defined by its present Charter (Chapter 15505, Special Acts of 1931). It is true that the last mentioned Act of the Legislature repealed Chapter 13374, Special Acts of 1927, but the repealing Act itself (Section 35) provides that:
" 'Nothing in this Act shall be so construed as to alter, abolish, affect or amend any of the laws of this State now in force, etc., nor any of the ordinances of the City of St. Petersburg, except such as are in conflict with the provisions of this Act; and all such laws and ordinances not so in conflict are hereby declared to be in full force and effect.' *Page 840 
"In a brief which the Plaintiffs filed with the Court, they concede that the Legislature has full and complete power and control of municipalities, and can validate, either by general or Special Act, any omission or defect which the Legislature might have omitted in the first instance, but they do not concede that Chapter 13374, Acts of 1927, had the effect of validating the ordinances of the City above referred to, for the reason that, as they contend, such ordinances were null and void ab initio. The Court is of the opinion that this contention of the Plaintiffs is not now an open question for consideration for that in the case of State, ex rel., Keefe v. City, 144 So.2d 313, the Supreme Court of this State say:
" 'A majority of the Court are of the opinion that under the Acts of the Legislature just mentioned, the several ordinances annexing Zones 1, 2, 3 and 4 to the City of St. Petersburg, are still in full force and effect and are still binding upon the relators, because each of said subsequently enacted charter acts expressly provides for continuing in full force and effect all pre-existing outstanding municipal ordinances not in conflict with the terms of the Acts themselves.'
"That the ordinances of the City annexing the various territory to the City are not in conflict with any of the terms of the Legislative Charters referred to by the Supreme Court is apparent from the following language of the Court found in the body of the opinion in the case last cited:
" 'A reasonable interpretation of Chapters 13377, 14389 and 15505, supra, discloses no intent on the part of the Legislature in enacting them to destroy the limitations previously imposed upon the taxing power of the City of St. Petersburg by the terms of said annexation ordinances under which its limits were extended under the general law. *Page 841 
And until such limitations are abolished by legislative action, evidenced by language of clear import to that effect, those limitations must be regarded as still in effect.'
"From what has been said above, this Court is of the opinion that the City of St. Petersburg legally levied and assessed taxes on all property in the territory defined as Zone 1 for the payment of all debts of the City without regard to the time when such debts were incurred, and therefore concludes that the motion interposed by the Defendants at the conclusion of the Plaintiffs' evidence, should be sustained and that the bill of complaint should be dismissed."
Appeal was taken from the final decree dissolving a previously granted temporary injunction and dismissing the bill of complaint on the grounds stated in Judge Hobson's opinion hereinbefore quoted.
While the cause was pending here on such appeal (which was with supersedeas) the Legislature at its 1933 session, enacted into law Senate Bill No. 683 (Chapter 16667, Special Acts of 1933). This Act was subsequently ratified at a referendum election, and so, for purposes of this case, may be regarded as being a statute of the State of Florida that is in full force and effect by virtue of its due ratification pursuant to its own terms.
Appellants now move, on the strength of the 1933 statute, for a reversal of the decree and a remand of this cause, on the ground that the Special Act of 1933 above mentioned, has effectually abolished the pre-existing method of advertising and selling lands for delinquent taxes, by providing that claims for such delinquent taxes shall be turned over to the City Attorney for collection by foreclosure suit, and that therefore the decree heretofore rendered in this cause should be reversed so that appropriate effect may be given *Page 842 
in the pending proceeding to the changed statutory law which it is asserted is controlling on the rights of the parties in this case.
Our conclusion is that the opinion filed in this case by the Chancellor as a basis for the entry of his final decree refusing to permanently enjoin the City's tax sale for 1932, was correct under the statute law as it existed at the time that decree was entered.
But whether or not the change in the City Charter affecting the method of enforcing delinquent taxes, precludes the right of the City to now hold the 1932 tax sale, is a question which may be raised and determined upon appropriate pleadings in the present case, but only upon amendment of the record in the court below and a reconsideration of the case by the Circuit Court in the light of the change made in the City Charter by the 1933 Act.
The opinion filed by the Circuit Judge is approved and the final decree appealed from is accordingly affirmed, but without prejudice to the right of complainants in the court below to file a supplementary bill of complaint based upon any rights they may have acquired under the 1933 Act of the Legislature with respect to the method of enforcement of the taxes and assessments sought to be enjoined in this case.
Affirmed without prejudice and remanded with leave for further proceedings.
DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur. *Page 843