COMMERCIAL NATIONAL BANK v. CHARLES S. BURCH, Receiver,

and

CHARLES S. BURCH, Receiver, v. KALAMAZOO PAPER COMPANY.

*Filed at Ottawa May 12, 1892.*

1. CORPORATION—*power of president and secretary to make an assignment to a creditor.* The board of directors of an insolvent corporation passed this resolution: "The president and secretary of this company are authorized to hereafter execute judgment notes, chattel mortgages, bills of sale, or other instruments in their judgment necessary to the financial interests of the company:" *Held,* that under this resolution the president and secretary of the corporation had the power to make an assignment of its book accounts to a creditor holding the company's judgment notes.

2. SAME—*power to purchase its stock.* The purchase of its own stock by a corporation by the exchange of its property of equal value, though made in good faith and without any element of fraud about it, there not being anything in the apparent condition of the company to interfere with the making of the exchange, will not be allowed when it injuriously affects a creditor of the company, even though the fact of the indebtedness was not known to the stockholders.

3. SAME—*capital stock held in trust by the directors—relations of shareholders.* The capital stock of an incorporated company is a fund set apart for the payment of its debts, and the directors of the company hold it in trust for that purpose, and the shareholders of the corporation are conclusively charged with notice of the trust character which attaches to its capital stock. As to it they can not occupy the *status* of innocent purchasers, and when they have in their hands any of this trust fund, they hold it *cum onere* subject to all equities which attach to it.

4. CHOSE IN ACTION—*equities against original assignee follow as to subsequent assignees.* Each successive assignee of a chose in action takes it subject to equities existing between the original assignee and his immediate assignee. So where an insolvent corporation gave its note in payment for shares of its stock in fraud of its creditors, and secured its payment by the transfer of all its book accounts, it was *held,* that the assignment of the book accounts could not be enforced by the holder of such note to the injury of the creditors of the corporation, even though such holder was an innocent purchaser, without notice of any equities against the same.

Shope, J.

5. A creditor of an insolvent corporation bought one hundred and thirty shares of its capital stock for the company, whereby he became a stockholder. He transferred this stock to the company, and procured therefor the judgment note of the company for $13,000, payable to the order of the maker, which the company indorsed in blank. He also procured from the company a written assignment of all its book accounts of every kind, amounting in the aggregate to something over $30,000, as collateral security for the $13,000 note and another note of the company. This creditor then pledged his note as collateral security to a bank, which claimed a preference in payment from the collection of the book accounts under the assignment: *Held,* that neither such creditor, nor the bank, as his assignee, was entitled to any preference over the other unsecured creditors.

6. FRAUD—*of agent—chargeable to principal.* A, acting for himself, and also as the agent of B, in the collection of an honest, *bona fide* debt of a printing company, which had given to B its note for the sum due, by falsehood, deception, deceit and fraud induced the proper officers of the printing company to make an assignment to him, A, of all its book accounts, as collateral security for the payment of the note to B, as well as of one to himself. Upon obtaining such assignment, A, in violation of his promise, took forcible possession of the company's books of account, and had the sheriff levy executions upon all the company's tangible property under judgments taken by him upon other notes of the company, to which were attached warrants of attorney to confess judgment, and thus closed its business: *Held,* that B was chargeable with the fraud of its agent, A, and for the fraudulent means resorted to by its agent could not, in a court of equity, enforce the assignment for its benefit, as against the printing company and its other creditors.

7. CHANCERY—*claim founded on fraud not enforced.* To entitle a party to affirmative equitable relief he must come with clean hands and be prepared to do equity. If it appears that the claim sought to be enforced is unconscionable, or has been obtained by fraud, deceit or covin, a court of equity will refuse its aid.

8. RECEIVER—*appointment—whether questioned collaterally.* Where the court appointing a receiver for an insolvent corporation has jurisdiction of the subject matter and of the parties, the order appointing the receiver can not be questioned collaterally, no matter how erroneous it may be. It can not be attacked on appeal from an order refusing to give an intervening petitioner a preference of payment on his claim of an equitable lien upon the assets of the corporation.

9. APPEAL—*what questions involved.* Where a receiver is appointed to take charge of and wind up the affairs of an insolvent corporation, by consent of its officers, and a creditor, not a party to the suit, intervenes by leave of the court, and files his petition, not to vacate any

former order or decree, nor questioning the jurisdiction of the court to appoint the receiver, but for an order directing the receiver to pay the petitioner's claims in full out of the collections of the book accounts of the corporation, he claiming an equitable lien on the same, and such order is denied and the petition dismissed, his appeal from the order of dismissal will not bring up for review the order appointing the receiver and directing the property to be turned over to him.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

The J. L. Regan Printing Company, a private corporation of this State doing business in Chicago, became indebted to James J. West in a series of transactions, so that on the 27th of October, 1887, West held the judgment notes of the company for something over $40,000. It was also indebted to the Kalamazoo Paper Company in the sum of $2576, of which last company West was acting as the agent, for the purpose of closing its indebtedness with the J. L. Regan company. One Yaggy held one hundred and thirty shares of the stock of the J. L. Regan Printing Company, and also held a note against the company for a considerable amount. It seems that West, believing that Yaggy was unfriendly to his interest, refused to advance more money to the company unless Yaggy's note was paid and his stock purchased. West bought the stock held by Yaggy, under an understanding that the purchase was for the company, and the evidence shows that the purchase was made on its account. After the purchase by West, he transferred the stock to the company, and procured therefor the judgment note of the company for $13,000, bearing date September 23, 1887, payable to the order of the maker ninety days after date, with six per cent interest, and which was indorsed by the company in blank. The company also, on October 11, 1887, executed to the Kalamazoo Paper Company its promissory note of that date for $2576.27, payable three months after date, with eight per cent interest. To each of

these notes was attached a warrant of attorney authorizing confession of judgment thereon at any time.

On October 27, 1887, West procured from the J. L. Regan Printing Company a written assignment of all its book accounts of every kind, amounting in the aggregate to something over $30,000. This assignment was absolute on its face, but it is claimed and shown to have been taken as collateral security for the several notes held by West and the note to the Kalamazoo Paper Company. On the same day West had judgments entered up upon all of his notes except the $13,000 one before mentioned, the judgments amounting practically to $45,000. A few hours after obtaining the assignment of the book accounts, and about four o'clock, on October 27, 1887, West had the sheriff take possession of all the property except the book accounts belonging to the printing company. West took possession of the books immediately, and carried them away without the knowledge or consent of the printing company, and deposited them with his attorneys. On the 29th of October, 1887, two days later, West took the $13,000 note given by the company for the Yaggy stock, and said assignment of the book accounts, and delivered the same to the Commercial National Bank of Chicago as collateral security for a debt of $25,000 which he then contracted with the bank.

Under the executions issued upon the judgments in favor of West, all the property of the printing company was seized and its business closed. Thereupon some of the simple contract creditors filed their bill against the corporation and its officers and directors, West, the sheriff, and the Union Trust Company, one of the judgment creditors, praying for the dissolution of the corporation, the appointment of a receiver, and to enjoin the sales under said executions, and for other relief. A receiver was appointed by consent of the corporation and most of its officers, and the accounts of the company were, by order of the court, turned over to the receiver. On January 28, 1888, by leave of court, intervening petitions were

filed by the Commercial National Bank and the Kalamazoo Paper Company, the purpose thereof being to obtain an order of court to have the accounts theretofore assigned to West, applied, when collected, in discharge of the notes of the intervenors, respectively,—and this upon the ground that by virtue of the assignment of the book accounts to West they have a prior equitable lien thereon. The circuit court, at the hearing, dismissed both of said petitions. From this decree the intervenors appealed to the Appellate Court. That court affirmed the decree as to the bank, and reversed the same as to the Kalamazoo Paper Company, and from that decree this appeal is prosecuted.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellant:

An innocent purchaser or pledgee of a negotiable note who takes the same before maturity, obtains a good title, and may recover thereon. *Mix* v. *Bank*, 91 Ill. 23; *McIntire* v. *Gates*, 104 id. 500.

The Commercial Bank therefore obtained a good title when it got the $13,000 note as collateral security for a debt due from West to the bank. It also obtained a good title to the accounts and proceeds thereof as against the printing company and its receiver, subject only to the equities existing between that company and the original obligees. The printing company having placed in West the *indicia* of absolute ownership of the accounts, the bank received them free from all claims of the company or those claiming under it. *Coombes* v. *Chandler*, 33 Ohio St. 178; *McNeil* v. *Bank*, 46 N. Y. 325; *Moore* v. *Bank*, 55 id. 41; *Otis* v. *Gardner*, 105 Ill. 436; *Olds* v. *Cummings*, 31 id. 188; *Mott* v. *Clark*, 9 Pa. St. 399; *Weyh* v. *Boylan*, 85 N. Y. 394; *Horn* v. *Call*, 51 N. H. 287; *Clark* v. *Roberts*, 25 Hun, 86; *Cowdry* v. *Vanderberg*, 101 U. S. 572; *Armour* v. *Railroad Co.* 65 N. Y. 111; Colbrook on Collateral Security, secs. 432-437.

There being a *bona fide* indebtedness of the printing company to the Kalamazoo Paper Company, the former had a right to pay it by the assignment of accounts or in any other manner, and the paying of the account or giving the Kala-. mazoo Paper Company a preference is not such a fraud as other creditors can attack. *Thomas* v. *Mueller*, 106 Ill. 36.

A party taking collateral security, unless otherwise expressly stipulated between the parties, holds the same, and every part thereof, as security for the whole debt, and all debts contracted while holding such collateral. *Baldwin* v. *Bradley*, 69 Ill. 32; *Henry* v. *Eddy*, 34 id. 508.

The Commercial National Bank therefore had the right to hold the $13,000 note, and the security attending it, together with the other collaterals pledged at the same time as collaterals for the indebtedness contracted and before then owing by West to the bank, amounting in all to $43,000.

When the name of the president of a company appears to an instrument purporting to bind the company, the law will presume it was executed by sufficient authority from the body. *Sawyer* v. *Cox*, 63 Ill. 130; *Phillips* v. *Coffee*, 17 id. 154; *Millard* v. *Academy*, 8 Bradw. 341.

The document assigning the accounts to West having been executed by the president of the J. L. Regan Printing Company, with its corporate seal attached, attested by its secretary, it was not incumbent upon either West or the Commercial National Bank to inquire further regarding the authority of its officers to execute that document. They were strangers to the company, and not bound to know its by-laws. *Wait* v. *Smith*, 92 Ill. 385.

But, aside from this, there appeared on the record book of the corporation a resolution authorizing the execution of such a document, purporting to have been regularly passed September 24, 1887. The directors and officers of the company were chargeable with knowledge of what appeared upon the corporate records of the company. *Bank* v. *Tisdall*, 84 N. Y. 655.

The board of directors of a corporation may delegate discretionary power to a committee of its own members or to officers of the company elected by it. *Hoyt* v. *Thompson's Exr.* 19 N. Y. 207; *Burrill* v. *Bank,* 2 Metc. 163; Waterman on Corp. 365.

The authority, therefore, of James L. Regan, as president, and John H. Goessele, as secretary, to assign the accounts of the company to either pay or secure the debts of the company, would seem to be amply sufficient. Corporations may prefer creditors the same as individuals. *Reichwald* v. *Hotel Co.* 106 Ill. 438; *Burch* v. *West,* 134 id. 258; *Buell* v. *Buckingham,* 16 Iowa, 284.

A corporation has power to purchase its own stock, if it does not work to the injury of creditors. Morawetz on Private Corp. sec. 783; *Frazer* v. *Ritchie,* 8 Bradw. 354; *Clapp* v. *Peterson,* 104 Ill. 26.

The corporation having power to purchase its stock when solvent, the contract of purchase can not be absolutely void.

The bill was insufficient to authorize the appointment of a receiver.

Mr. MATTHEW P. BRADY, for the receiver:

Appellants can not attack collaterally the decree appointing the receiver. The court having jurisdiction, an error can not be taken advantage of collaterally. *Mining Co.* v. *Mining Co.* 111 Ill. 32; *Wenner* v. *Thornton,* 98 id. 156; *Harris* v. *Lester,* 80 id. 307; *Wing* v. *Dodge,* id. 564; *Adams* v. *Larimore,* 51 Mo. 130.

Whatever objection might have been validly urged against the appointment of a receiver was waived by appellants, and they can not now question the validity of his appointment.

Directors can not, without express authority or by necessary implication, delegate to others any portion of their power requiring the exercise of discretion or judgment, or which it is intended they shall exercise personally. Boone on Corp.

sec. 141, and cases in notes 8-11; *Flagstaff M. Co.* v. *Patrick,* 2 Utah, 304; *Davis* v. *Flagstaff M. Co.* id. 74; *Hyde* v. *Joyes,* 2 Am. Corp. Cas. 353; Green's Brice's Ultra Vires, 491, 492; *Gillis* v. *Bailey,* 21 N. H. 149; *Insurance Co.* v. *Chase,* 56 id. 341; *Silver Hook Road* v. *Greene,* 00 R. I. 187; *Bank Comrs.* v. *Bank,* 6 Paige, 497; *In re Leeds Banking Co.* L. R. 1 Ch. App. 563; *Percy* v. *Millardon,* 3 La. 468; *Glidden* v. *Hopkins,* 47 Ill. 525.

The assignee of a chose in action takes subject to all equities existing in favor of the original or other prior assignor. Pomeroy's Eq. Jur. secs. 707, 708; *Fortier* v. *Darst,* 31 Ill. 212; *Hawk* v. *Ament,* 28 Ill. App. 390.

The shares of a corporation can neither be increased nor diminished in number or nominal value, unless this be expressly authorized by the company's charter. 1 Morawetz on Corp. sec. 434.

It is apparent that the mode prescribed by the statute under which the corporation was organized, was not the method taken to effect a reduction of the stock in this instance.

The note given for the purchase of the shares is, under the evidence in the case as to the company's financial condition, void as against creditors. 1 Morawetz on Corp. secs. 112, 434; 2 id. sec. 793.

Messrs. CRATTY BROS., also for the receiver.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The original bill was a proceeding under section 25, chapter 32, of the Revised Statutes, entitled "Corporations," to dissolve the corporation known as the J. L. Regan Printing Company, to enjoin the sale of its property, and to procure the appointment of a receiver to wind up its affairs. The objection is made that the original bill fails to show a right in the circuit court to entertain jurisdiction and to appoint a receiver. The objection is based on the assumption that the proceeding is a

creditor's bill, which will not lie until the creditor has first reduced his demand to judgment, and exhausted his remedy at law by the return of an execution *nulla bona.* The propriety of the original decree appointing the receiver is not involved on this appeal. The decree was entered by consent of the corporation and most of its officers, and the receiver was acting under that decree when leave was granted to the Commercial National Bank and Kalamazoo Paper Company to intervene. They each filed their petition, not to vacate any former order or decree, nor questioning the power and jurisdiction of the court in the appointment of a receiver, but for an order directing the receiver to pay the petitioners' claims in full out of the collections made by him out of the book accounts of the insolvent corporation. This was the relief sought. The court denied this relief and dismissed the petition, and from this order they severally appealed to the Appellate Court. The appeals will not bring up for review the order appointing the receiver and directing the property to be turned into his hands. The relief asked by petitioners was in subordination to such orders, and in recognition of their validity. Moreover, the attack is here made collaterally, and as the court had jurisdiction of the subject matter and of the parties, its order, no matter how erroneous, can not be thus attacked. *Harris* v. *Lester*, 80 Ill. 307; *Wing* v. *Dodge*, id. 564; *Hernandes* v. *Drake*, 81 id. 34; *Wenner* v. *Thornton*, 98 id. 156.

The order dismissing the petitions is sought to be upheld upon the ground that the president and secretary of the printing company were without power or authority to execute the assignment to West, and that it is therefore void. It appears that the board of directors had, prior to this assignment, passed a resolution, as follows: "The president and secretary of this company are authorized to hereafter execute judgment notes, chattel mortgages, bills of sale, or other instruments in their judgment necessary to the financial interests of the

company." We are inclined to concur with the Appellate Court that the president and secretary, under such resolution, had power and authority to execute said assignment.

The only remaining question to be considered is, whether the court below erred in refusing to direct the payment of the money of the insolvent debtor corporation, derived from the collection of the book accounts, to be first applied on the claims of the intervening petitioners. In respect of the petition of the Commercial National Bank we are inclined, after full consideration of the case, to adopt the opinion of the Appellate Court, which is as follows:

"The sole consideration of the $13,000 note, to satisfy which the bank now seeks to have the book accounts which were assigned to West, and by him to the bank, applied, was the purchase of a portion of the capital stock of the printing company. The financial condition of the printing company at the time that West purchased the said shares of stock was not such as would, under the law as announced by our Supreme Court, permit it to thus diminish its capital stock and impair the rights of its creditors,—and that condition was known to West. The purchase of the stock by West from Yaggy made West a stockholder of the company, and he, knowing its condition, could not sell that stock to the company in such a manner as to hold property received from the company in consideration thereof, against then existing creditors of the company. The question is settled by the decision of the case of *Clapp et al.* v. *Peterson,* 104 Ill. 26, where it is held that the purchase of its own stock by a corporation by the exchange of its property of equal value, though made in good faith and without any element of fraud about it, there not being anything in the apparent condition of the company to interfere with the making of the exchange, will not be allowed where it injuriously affects a creditor of the company, even though the fact of the indebtedness was not at the time established or known to the stockholders. The court holds that

the capital stock of an incorporated company is a fund set apart for the payment of its debts, and that the directors of the company hold it in trust for that purpose, and say: 'The shareholders of the corporation are conclusively charged with notice of the trust character which attaches to its capital stock.' As to it they can not occupy the status of innocent purchasers, but they are to all intents and purposes privies to the trust. When, therefore, they have in their hands any of this trust fund, they hold it *cum onere* subject to all equities which attach to it. Now, the evidence, so far as it shows the purpose for which the assignment of the book accounts was made, establishes that it was made as security for the note for $13,000, given in consideration of the transfer of the stock to the company, and as security for the payment of the debt due to the Kalamazoo Paper Company. This is the testimony of West and of the secretary of the company, and is substantially uncontradicted. The transfer of the notes from West to the bank having been made before the note was due, made the bank an innocent holder of the note for value, and protected it under the rule which protects the innocent purchaser of negotiable paper. But the book accounts were mere choses in action, and the assignment of them a transfer of so much of the property of the J. L. Regan Printing Company to West to satisfy the said note. Each successive assignee of a chose in action takes it subject to the equities existing between the original assignor and his immediate assignee. Therefore, if West could not hold the book accounts as collateral security for the payment of the $13,000 note, the bank can not hold it, for, as far as the assignment of the book accounts was concerned, the bank stands in the shoes of West. It holds its negotiable promissory notes relieved from all defenses, but held the book accounts subject to all defenses, and therefore subject to the claims of the creditors of the corporation. The court therefore properly dismissed the intervening petition of the said bank, but such dismissal will not operate to prevent said bank

34—141 ILL.

from proving up its claim upon the note, and sharing *pro rata* in the assets of the printing company in the hands of the receiver."

In respect of the decree dismissing the intervening petition of the Kalamazoo Paper Company, we, however, feel constrained to differ with that court in the result reached. There is, as it is said, no question that the claim of the paper company was *bona fide.* The Regan Printing Company was at the time a going corporation, and, as said by this court in *Burch* v. *West,* 134 Ill. 258, it is clear that the officers of the corporation did not contemplate that the corporation would make a voluntary assignment of its property, and that those in charge of its business were using every endeavor to tide over the indebtedness of the corporation with a view of an improvement in its affairs. In that case the question was, whether the execution and delivery of the judgment note amounted to a voluntary assignment, and it was held that it did not. The court there found that the judgments sought to be enjoined were based upon full, adequate and valuable considerations, and it was said that nothing appears in the record to charge any of the judgment creditors with fraud, or to show that the judgments were collusively entered. The judgments being in nowise impeached under the statute, (Rev. Stat. p. 69, sec. 7,) could not be enjoined, and it was accordingly held that the bill seeking to enjoin the collection of the judgment was properly dismissed. In this case no attack is made upon the judgment of the Kalamazoo Paper Company, nor is it sought in any way to interfere with its collection. On the contrary, the Kalamazoo Paper Company comes into a court of equity and seeks affirmative relief in its own behalf. To entitle it to such relief it must come with clean hands, and be prepared to do equity. A party will not be permitted to come into a court of equity to enable him to reap the fruits of fraud; and if it appears that the right sought to be enforced in equity is

unconscionable, or has been obtained by fraud, deceit or covin, a court of equity will not lend its aid.

It is conceded that James J. West was the authorized agent of the Kalamazoo Paper Company. At the time of the execution of the note to the paper company and the assignment of the book accounts to West, he knew that the J. L. Regan Printing Company was an insolvent corporation, that it was largely indebted to other persons and corporations, and unable to pay its debts. The Kalamazoo Paper Company must be held responsible for the knowledge and conduct of its agent, West. He, by his representations and conduct, had led the president of the Regan Printing Company to believe that he was friendly to it, and would aid it financially. The proof tends to show that West applied in the afternoon to the president of the company for the execution of the assignment, saying, in effect, that he only wanted it as protection in the event that anything happened; that the president might be killed in going up and down the elevator, and the like; that it was intended to put the notes away where they could not be seen, and the assignment would be used only in the event of disaster overtaking the company, and that the president was induced by these representations to execute the formal assignment. On the same afternoon, after procuring the assignment, West caused judgments to be entered up upon the notes which he held for over $40,000, and execution immediately to be issued, and the sheriff put in possession of all the property of the company on the same day, and its business closed. On the same afternoon, in the absence of the officers of the company and in apparent violation of the understanding, the books were, by West's orders, loaded into a wagon and taken to the office of West's attorney, and two days later delivered into the possession of the Commercial National Bank as collateral to the note of West. As said by the Appellate Court, "the fact that West intended, at the time he took the

assignment, to enter up his judgments and levy upon the remaining property of the company, and leave other creditors with their debts unpaid, may be fairly inferred from the evidence." But there is more than this. He procured the preference by unquestioned fraud and overreaching, and now he, or his principal, for whom he acted, seeks the aid of a court of equity to reap the fruits of his fraudulent practices.

We fully recognize the doctrine that the law favors the diligent creditor, and will uphold him in pursuing all legitimate means to secure or satisfy his debt, whether the debtor be an insolvent corporation or an insolvent person. But here the means resorted to were not legitimate, but were in the highest sense culpable and fraudulent. The officers of the company were led to believe that by taking this step they would be permitted to go on, with a fair hope of meeting the obligations of the corporation. Without the active fraud practiced it is clear the assignment would not have been made. As said by this court in *Fortier* v. *Darst*, 31 Ill. 212: "A party who comes into a court of equity asking for equitable relief, which a court of law can not afford him, and exhibits a case all blotched over with fraud and overreaching, as this is, must expect but little favor or sympathy at our hands." Here, the assignment was obtained through falsehood, fraud and deception, and possession of the books of account taken forcibly and without leave of the company, and, as before said, at least in apparent violation of the understanding.

It is not necessary to here determine whether the officers of an insolvent corporation, knowing it to be insolvent, may prefer creditors, for the preference here obtained was not by the consent fairly or lawfully obtained from any officer of this corporation. In equity and good conscience it should be treated as if no assignment had been attempted to be made.

We are of opinion that the Appellate Court erred in reversing so much of the decree of the circuit court as dismissed the intervening petition of the Kalamazoo Paper Company,

and in so far the judgment will be reversed. In all other respects the judgment is affirmed.

It being admitted that the debt was *bona fide,* there is no objection apparent in permitting the Kalamazoo Paper Company to prove its claim and share *pro rata* in the assets in the hands of the receiver, with the other unsecured creditors.

*Judgment affirmed in part and in part reversed.*