WALLACE TERVIN and V. H. OSBORN v. STATE, *ex rel.* CARY D. LANDIS, *Attorney General.*

156 So. 627.
Division B.
Opinion Filed September 25, 1934.
Petition for Rehearing Denied October 12, 1934.

*Sam Bucklow, John M. Allison* and *Knight, Thompson & Turner,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, *G. P. Smythe, Grimes & Rowe, D. G. Haley, Sidney B. Perry* and *Carey & Askew,* for Defendants in Error;

*Dewey A. Dye,* as *Amicus Curiae.*

BUFORD, J.—This case is before us on writ of error to review the judgment of ouster in *quo warranto* proceedings. The proceedings were filed by the Attorney General and certain co-relators seeking to oust Wallace Tervin and V. H. Osborn from exercising the powers of a public corporation under the name of Bishop's Harbor Drainage District in the County of Manatee, Florida.

It was alleged that Wallace Tervin pretended to be, and claimed authority as, a supervisor of such drainage district and that V. H. Osborn claims to be the Receiver of Bishop's Harbor Drainage District, both without authority of law and in violation of the Constitution.

It was also alleged that two other persons had at one time pretended to be supervisors with Tervin, constituting the Board of three supervisors of the named drainage district, but that one of such supervisors had died and no successor had been appointed and that the other had long since left the State of Florida and no successor to him had been appointed.

The record shows that on the 7th day of October, 1927,

a petition was filed by certain property owners in Manatee County in the office of the Clerk of the Circuit Court of Manatee County praying for the formation of a drainage district to be known as Bishop's Harbor Drainage District. Notice of said petition was filed and published. A hearing was held on December 15, 1927, before Circuit Judge Paul C. Albritton, Judge of the Circuit Court in and for the Twenty-seventh Judicial Circuit of Florida, in the absence of Hon. W. T. Harrison, Judge of the Eighteenth Judicial Circuit of Florida, in which latter circuit the lands were located, at which time a decree was entered by Judge Albritton establishing what was known as Bishop's Harbor Drainage District.

A petition for appointment of the three commissioners was filed and after notice an order appointing such commissioners to apprise said land was entered on March 24, 1928, by Judge Harrison. Subsequent thereto notice of filing of commissioners' report was entered, which report was confirmed on May 18, 1928.

On December 30, 1927, the office of Secretary of State at Tallahassee, Florida, advised that certified copy of the decree of the Circuit Court establishing Bishop's Drainage District had been filed in that office. Following report of the commissioners a petition was filed by the pretended district on May 9, 1928, to validate certain bonds. The State of Florida was made a party defendant. A notice addressed to all taxpayers and citizens of the district was filed in the office of the Clerk of the Circuit Court of Manatee County and was published as required by provisions of Section 3297 R. G. S., 5107 C. G. L. In due course decree *pro confesso* was entered against all parties except the State. The State of Florida, by and through the State's Attorney of the Eighteenth Judicial Circuit, filed an answer as required

by Section 3297 R. G. S., 5107 C. G. L., which answer demanded proof of allegations of the petition.

It appears there was no proof of the allegations of petition but decree was entered by the Circuit Court of Manatee County validating the bonds and declaring all the proceedings leading up to the issue and sale of the said bonds to be validated, approved and confirmed. The bonds were then issued and sold. The bonds became in default and the holder of the bonds instituted suit and in that suit a Receiver was appointed by the Circuit Court of the Eighteenth Judicial Circuit. The Receiver named was V. H. Osborn. He qualified as such Receiver and when he sought to enforce the payment of the taxes assessed against the lands in the purported district for the purpose of paying the bonds in default this proceeding in quo warranto was instituted.

On final hearing, judgment of ouster was entered.

The members of this Court have never been in harmony in holding the provisions of Chapter 6458, Acts of 1913, being Sections 1098 *et seq.*, R. G. S., 1451 *et seq.* C. G. L., providing for the formation and creation of a drainage district to be constitutional and valid, but the Court, by a majority opinion has so held, and therefore, the validity of these statutory provisions is no longer in question.

Assuming the statute to be valid, and we do, and that the power is vested in the Circuit Courts of the State to by decree establish drainage districts in accordance with the provisions of the Act and confirming and validating the proceedings instituted for that purpose (see Towns *et al.* v State *ex rel.* Attorney General, 102 Fla. 188, 135 Sou. 822) we must hold that this is a statutory proceeding and that the court only acquires jurisdiction to render its decree by petitioners complying strictly with the provisions of the

statute and in this matter it is only necessary for us to discuss that phase of the questions presented here.

Sec. 1098 R. G. S., 1451 C. G. L., provides in part as follows:

"The Board of Drainage Commissioners of this State, or a majority, either in numbers or in acreage, of the holders of any contiguous body of wet or overflowed lands, or lands subject to overflow, situate in one or more counties in this State, may form a drainage district for the purpose of having such lands reclaimed and protected from the effects of water, for sanitary or agricultural purposes, or when the same may be conducive to the public health, convenience or welfare, or of public utility or benefit, by drainage or otherwise, and for that purpose the said board of drainage commissioners, or a majority of the acreage of said lands may make and sign a petition in which shall be stated the name of the proposed drainage district, and the number of years the same is to continue."

If this language left any doubt as to jurisdictional prerequisites that doubt must be removed by the provision contained in Section 1100 R. G. S., 1453 C. G. L., which is:

"Provided that no drainage district shall be established or consolidated under any provisions of this Article until there shall have been first obtained the written approval or consent of the owner or owners of a majority in acreage of the lands within said district."

Now, the record before us shows that the petition filed in the office of the Clerk of the Circuit Court was not signed by the Board of Drainage Commissioners of the State. It was not signed by a majority, either in numbers or in acreage, of the owners and holders of the body of land sought to be included in the district. The petition on its face shows that there was sought to be included in this drainage

district 8,391.55 acres. It shows upon its face that the owners of only 2,015.50 acres signed the petition if all names on the petition are counted as valid. It also shows on its face that a great deal less than one-half of the known owners of lands to be included within the district were signers of the petition. Therefore, it follows that the court never acquired jurisdiction to create the district; that there was no *bona fide* attempt to follow the provisions of the statute and that there was no justification or foundation for a decree of the court declaring the existence of the drainage district. The court having been without jurisdiction because of the lack of a petition as required by statute to make or enter any order in connection with the creation of such district, it follows that the order was void in so far as it purported to establish a drainage district.

In holding as above stated, we follow former decisions of this Court.

In Coslick v. Vinney, 104 Fla. 394, 140 Sou. 216, we said:

"Every valid judgment must be based on power to enter, together with jurisdiction of parties and subject matter."

In Wiles v. State, 79 Fla. 575, 84 Sou. 664, and in Malone v. Meres, 91 Fla. 709, 109 Sou. 677, we said:

"Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void." See also City of Miami *et al.* v. Romfh, *et al.*, 66 Fla. 280, 63 Sou. 440.

The judgment to which writ of error is taken goes further than the purview of a judgment in quo warranto wherein the circuit court entered judgment as follows:

"It Is Further Ordered and Adjudged in accordance with the verdict of the jury, that Municipal Bond and Mortgage Company also known as Municipal Bond and Mortgage Corporation is not a bona fide holder of bonds alleged to have been issued by Bishop's Harbor Drainage District."

The judgment to be entered in quo warranto proceedings is either a judgment quashing the writ for a judgment of ouster and the court is without jurisdiction to adjudicate rights of parties who are not parties to the proceedings. Therefore, so much of the judgment of the lower court as attempted to adjudicate the validity of bonds issued by the purported district and then outstanding purporting to be valid obligations of the district was of no force and effect against third parties and should be reversed and the judgment should be reformed so as to eliminate such adjudication therefrom. It is so ordered.

What has just been said applied also to that part of the judgment which adjudicates the ouster of the Receiver, V. H. Osborn. The record shows that Osborn was appointed Receiver in a suit instituted by bondholders by order of a court of competent jurisdiction then having jurisdiction of the parties to that suit and of the subject matter. The proceedings here constitutes a collateral attack on the order of the court appointing the Receiver.

It appears to be well settled that when the court appointing a Receiver has jurisdiction of the subject matter and of the parties its order appointing a Receiver, no matter how erroneous, can not be reached by a collateral attack. See Cadel v. Baker. 20 Wall 650, 22 Law Ed. 448; Commercial National Bank v. Burch, 141 Ill. 519, 31 N. E. 420, 33 Am. St. Rep. 331; Whitney v. Hanover National Bank, 71 Miss. 1009, 15 Sou. 33; Texas

etc. R. R. Co. v. Gray, 86 Tex. 571, 26 S. W. 599, 25 L. R. A. 52.

Therefore, the judgment should also be modified so as to eliminate therefrom the order of ouster entered against Osborn, Receiver. And, as modified, the remainder of the judgment shall stand affirmed and it is so ordered.

Affirmed as modified.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.