MUNICIPAL BOND AND MORTGAGE CORPORATION v. BISHOP'S HARBOR DRAINAGE DISTRICT.

JACOB RUPPERT, LES JARDINES DE FLORIDA, a Corporation, R. H. PRINE, *et ux.,* MARGARET G. MYERS, and HITCHCOCK-CLEVELAND CORPORATION, Intervenors.

182 So. 794.
Opinion Filed July 13, 1938.

*Peter O. Knight, C. Fred Thompson, A. G. Turner, John Bell* and *John M. Allison,* for Appellant;

*G. P. Smythe, D. G. Haley, Sidney R. Perry, A. B. Rowe* and *Carey* and *Harrison,* for Intervenors.

Brown, J.—This is an appeal from an order of the Circuit Court granting the intervenors' motion to dismiss

the bill of complaint filed in this cause. The bill of complaint, as amended, sets up in substance that on October 17, 1927, a petition was filed with the Clerk of the Circuit Court of Manatee County, Florida, by certain property owners "in said petition stated to be" owners of a majority of the acreage of lands within the proposed district in said petition set forth, for the formation of a drainage district to be known as Bishop's Harbor Drainage District as provided by the Laws of Florida (1451-1522 C. G. L. 1927) and that the Clerk gave notice by publication in form provided for by law; that "such proceedings were had upon said petition that by decree of the Circuit Court of the 18th Judicial Circuit of Florida in and for Manatee County bearing date the 15th day of December, 1927, it was ordered, adjudged and decreed that there be and is hereby established, organized and incorporated a drainage district known and designated as Bishop's Harbor Drainage District. The decree was filed in the Clerk's office and recorded and certified copy of findings and decree transmitted to the Secretary of State. Publication was had and a meeting called for the election of a Board of Supervisors for said district. A meeting of the owners of land in said district was held and F. C. Armstrong, J. M. Watts, and Wallace Tervin were elected Supervisors. · They took oath and entered upon the performance of their duties, electing a President, adopting a seal, appointing an attorney, etc., and levied a tax of fifty cents per acre upon the land within the district to be used in paying the expenses necessarily incurred as might be estimated by the Board of Supervisors and Chief Engineer of said district. The Board adopted a plan of reclamation and filed a copy with the Clerk of the Circuit Court. The Board petitioned the Circuit Judge and he appointed three commissioners to appraise lands for rights of way, etc., and to assess benefits and damages accruing to all lands in

the district by reason of the execution of the plans. The Commissioners qualified, took oath and entered upon the performance of their duties and assessed damages and benefits that would accrue to the lands and filed their report with the Clerk. Notice was properly given by publication. By decree of the Circuit Court the report was approved and confirmed and a copy sent to the secretary of the Board of Supervisors. Tax was levied on benefited lands by the Board in proportion to the benefits found by the Commissioners. The taxes were listed according to the form provided by law and prepared.

The Board resolved to issue bonds in the sum of $130,-000.00. Proceedings were had in the Circuit Court of Manatee County and a decree of that court validated the issue. The bonds were sold and a contract let for the construction of the works proposed by said plan of reclamation, said works were constructed by a contractor and paid for by Board of Supervisors. Thereafter on April 24, 1935, quo warranto proceedings were brought to oust Wallace Tervin, the only remaining Supervisor, and Osburn as receiver for the district. Jury trial was had and it was adjudged, "in accordance with the verdict of the jury that Bishop's Harbor Drainage District was never legally created and has no legal existence, and it is thereby further ordered and adjudged, in accordance with the verdict of the jury, that the Municipal Bond and Mortgage Company, also known as Municipal Bond and Mortgage Corporation, is not a *bona fide* holder of the bonds alleged to have been issued by Bishop's Harbor Drainage District." That the Supreme Court reviewed the judgment on writ of error, and it was ordered that said judgment be reformed so as to eliminate therefrom the adjudication that the Municipal Bond and Mortgage Corporation is not a *bona fide* holder of the bonds and that the judgment be modified to eliminate

the order of ouster against Osburn, receiver, and that the rest of the judgment be affirmed; citing the decision referred to as being reported in 116 Fla. 633, 156 So. 627.

It was further alleged that complainant herein is the holder and owner of all of the bonds above described in the amount of $130,000.00, and the unpaid interest coupons attached to the bonds. That no interest has been paid since July 1st, 1930, and that large amounts of the taxes levied are unpaid and the owners of land in said district refuse to pay and the district has ceased to function or to take any steps to enforce payment of said taxes or to make levies of taxes to pay bonds or coupons, and that the Drainage District has no funds. That said interest coupons and bonds, under Florida law, are liens upon the lands of the district and upon unpaid drainage taxes now due. That no one is acting as supervisor and except for activities of the receiver no effort is being made to raise money for payment of bonds and interest coupons.

It was also alleged that there are divers suits pending in court by the receiver, V. H. Osburn, for foreclosure of liens of certain taxes assessed by the District.

Then follows the prayers of the bill that:

"1. This court maintain jurisdiction of the parties and subject matter of this suit.

"2. That the court take an accounting and ascertain amount due complainant upon bonds and coupons due and which may become due during pendency of the suit.

"3. That the amount found due be decreed a lien upon the drainage district, lands therein and taxes levied thereon.

"4. That this court continue the receivership with full power and authority in the receiver to enforce collection of unpaid taxes and to take any other steps to protect the lien of complainant, to take possession of all books, property,

etc., of the district and exercise all powers and duties provided to be exercised by the Supervisors, officers and agents of said drainage district and to levy taxes on land and make valuations upon which taxes are to be levied (subject to confirmation of the court) necessary to enforce payment of bonds and enforce lien thereof.

"5. That all persons with notice of appointment of the receiver be enjoined from interfering with or molesting the receiver in the performance of his duties and collection and disbursement of drainage taxes levied upon lands of said district.

"6. And for other and further relief."

The suit was brought against the Bishop Harbor Drainage District. Jacob Ruppert intervened, and by his attorney filed his motion to dismiss the bill of complaint, assigning ten grounds. Les Jardines de Florida, R. H. Prine, *et ux.*, and Margaret Myers intervened and by their attorneys filed their motion to dismiss the bill of complaint. The Hitchcock-Cleveland Corporation, by its attorney, intervened and filed its motion to dismiss and assigned ten grounds therefor.

Thereafter on the 28th day of May, 1936, the Circuit Judge granted the motion to dismiss the bill of complaint filed in this case. The reasons given by the Circuit Judge for granting the motion were that the bill of complaint as amended should contain an allegation that Bishop's Harbor Drainage District had a *de facto* corporate existence, was organized *bona fide,* and that complainant was and is the *bona fide* holder of the bonds, owning without notice or knowledge of the lack or non-existence of power to issue bonds and of the nullity of the purported organization proceedings. Time was allowed the complainant to amend the bill to conform with the order. The case is now before this Court on appeal from said order.

In the case referred to in the bill of complaint, Tervin v. State, 156 So. 627, 116 Fla. 633, this Court held that the order of the Circuit Court purporting to establish the Bishop's Harbor Drainage District was void. It was therein said:

"Now the record before us shows that the petition filed in the office of the Clerk of the Circuit Court was not signed by the board of drainage commissioners of the State. It was not signed by a majority, either in number or in acreage, of the owners and holders of the body of land sought to be included in the district. The petition on its face shows that there was sought to be included in this drainage district 8,391.55 acres. It shows upon its face that the owners of only 2,015.50 acres signed the petition if all the names on the petition are counted as valid. It also shows on its face that a great deal less than one-third of the known owners of land to be included within the district were signers of the petition. Therefore, it follows that the court never acquired jurisdiction to create the district, that *there was no bona fide attempt to follow the provisions of the statute,* and that there was no justification or foundation for a decree of the court declaring the existence of the drainage district. The court having been without jurisdiction because of the lack of a petition as required by statute to make or enter any order in connection with the creation of such district, it follows that the order was void in so far as it purported to establish a drainage district."

The generally accepted elements that are essential to establish a *de facto* corporation are set out in 1 Thompson on corporations, page 244, Sec. 229:

"ESSENTIAL ELEMENTS OF DE FACTO CORPORATION.

"1. A law or charter providing for the organization of the corporation of the kind attempted to be organized.

"2. *An attempted Good Faith compliance with the statutory requirements intended as conditions precedent to corporate existence.*

"3. *An unintentional omission of some legal requirement.*

"4. The exercise in good faith of corporate functions by which it is intended to carry out the purpose and object of the attempted incorporation under the law."

In this connection, see also Duke v. Taylor, 37 Fla. 64, 19 So. 172, 31 L. R. A. 484; State v. City of Cedar Key, 122 Fla. 454, 165 So. 672, and City of Winter Haven v. Klemm, 132 Fla. 334, 181 So. 153, 170.

It can be seen from the above that in the quo warranto proceedings, Tervin v. State, *supra,* it was held by this Court that the petition was fatally defective and that the essential requirements of a *de facto* corporation, for the reasons stated in the opinion, did not exist, and that the attempt to form the district was not a *bona fide* one.

This appellant, however, was not a party to that proceeding, though it is referred to in the appellant's amended bill. The bill of complaint in the present case does not directly allege that there was either a *de jure* or a *de facto* corporation, nor does it allege sufficient facts from which it could be clearly inferred that either a *de jure* or a *de facto* corporation existed; though it is very ably contended that the facts alleged to show that the district had a *de facto* existence; but the appellant apparently relies mainly on the effect of the validation proceedings and the decree issued therein before the bonds were issued and sold to the bondholder. It will have been observed that the amended bill does not allege that the petition for the formation of the district was signed by either a majority of the owners or by the owners of a majority acreage of the lands, as re-

quired by the statute; it merely alleges that the petition as filed so stated. Thus the bill fails to allege a jurisdiction prerequisite to the exercise by the Circuit Court of the statutory power of establishing the district. A mere group of individuals, constituting far less than the number of owners or owners of a majority acreage as required by the statute, cannot form a drainage district, even if they succeed in getting a court decree purported by establishing the district, the decree being void for want of jurisdiction and the filing of the petition not being *bona fide*. In forming such a district under the statute, the Circuit Court is not exercising its general judicial power, but a specially delegated statutory authority.

The question involved in this case seems to be the determination of just to what extent a decree validating a bond issue will actually make valid bonds that are issued by an alleged drainage district that the bill does not show to have had even a *de facto* existence. If the decree validating the bonds was sufficient to make such bonds binding obligations on the lands in the proposed district, and the innocent non-participating owners thereof, then of course it would be unnecessary to allege in the bill that the district was either a *de jure* or a *de facto* corporation or that the holder of the bonds had no notice or knowledge of the nullity of the purported organization proceedings.

It is our opinion that there must have been at least a *de facto* corporation existing at the time the bonds were issued, and that a validation proceeding and a decree entered therein cannot supply this deficiency. In the instant case, under the principles laid down by this Court in Tervin v. State, *supra,* we must hold that there was never a Bishop's Harbor Drainage District, that the bill does not clearly show that there was a *bona fide* attempt to follow the jurisdictional provisions of the statute, or that they were followed

at all, as respects the filing of the petition, and that the order purporting to establish this district was necessarily *void*. If there was never an existing district corporation, either *de jure* or *de facto,* to issue the bonds, then the validation decree could not breathe life into these bonds so as to make them binding on the landowners of a district that never existed.

The validation proceedings were instituted under Sections 5106-6112, Compiled General Laws, Sections 3296-3302, Rev. Gen. Stats. It is provided by statute that:

"In the event no appeal is taken within the time prescribed herein, or is taken, and the decree validating said bonds or certificates is affirmed by the Supreme Court, the decree of the Circuit Court validating and confirming the issuance of the bonds or certificates *shall be forever conclusive as to the validity of said bonds or certificates against the county, municipality, taxing district, or other political district or subdivision issuing* them, and against all taxpayers and citizens thereof; and the validity of said bonds or certificates shall never be called in question in any court in this State."

As can be seen from this statute, the decree shall be forever conclusive as to the validity of the bonds against the *taxing district*. The statute presupposes that there *is* a taxing district. Where it appears that a district has never existed, then the bonds were never issued by a taxing district and there is none in existence against which the bonds could be conclusively validated.

It was held in the Federal case of Greene v. Uniacke, 46 F. (2d) 916, which case involved our validation statute, that a drainage district is a taxing district within the law authorizing an action to determine the legality of proceedings in connection with bonded debt or certificates of indebtedness.

This cannot be doubted, but in the instant case the bill does not clearly show that there was a drainage district, either *de jure* or *de facto; per contra* the bill refers to the quo warranto case in which it was decided to the contrary; that is, it was there held that the court was without jurisdiction when it made the order purporting to establish a drainage district It necessarily follows that the supervisors were without *authority* to issue any bonds which could bind the purported district, as they could not derive authority from a court which had no jurisdiction, and could not bind a district which had no existence, either *de jure* or *de facto*. The reference in the bill to the decision in that case made it all the more incumbent upon the appellant to allege in his bill facts showing that the alleged district had at least a *de facto* existence at the time the bonds were issued.

This Court in State v. Crandon, *et al.,* 115 Fla. 153, 155 So. 667, said that:

"Judicial power may adjudge the validity of district bonds within the statutory limitations authorizing the bonds; but a judicial decree cannot give validity to district bonds issued without, or, in excess of, statutory authority; and a decree adjudging the validity of district bonds, as well as the provisions of the bonds, should be interpreted according to the provisions of the authorizing statutes."

"Judicial validation decrees cannot confer authority to issue bonds when such authority has not been conferred by the Constitution or the statutes of the State."

The authority for issuing the bonds in question must be derived from the law. Where a district has not been created and has never had an existence, either *de facto* or *de jure,,* the statutes of our State do not confer any authority upon this illegal district to issue bonds, and the judicial validation decree cannot confer authority to issue bonds and "cannot give validity to district bonds issued without statu-

tory authority." In this connection see Ocean Beach Heights v. Brown-Crummer Inv. Co., 302 U. S. 614, 58 Sup. Ct. 385, 82 L. Ed. 380.

In the case of State v. City of Cedar Key, 122 Fla. 454, 165 So. 672, the situation was somewhat different in that the municipality was attempted to be created by a special charter Act of the Legislature, which body is vested with full power to establish municipalities, and its bonds were validated and issued while the city was "a functioning city" and "at a time when the City of Cedar Key was at least a *de facto* municipal corporation" and the Legislature by its legislative Acts had "repeatedly recognized, ratified, approved and confirmed the creation, incorporation, and actual existence of a municipality described as the City of Cedar Key." It was held in that case that the innocent holders for value could enforce the bonds against this *de facto* corporation, after the quo warranto proceedings had terminated and judgment of ouster entered.

If we view the present case in the light of the Cedar Key case, *supra*, we come to the conclusion that the chancellor ddi not err in his ruling that the bill must allege that the issuing district had at least a *de facto* existence or must set up facts that plainly show that the district had such a status. ·

It was said in the case of State v. Bellair, 170 So. 434, 125 Fla. 669, at page 437:

· "The basis for the doctrine permitting courts to declare bonds void for want of authority to issue them, though they may be held by innocent purchasers, is that no title can ever pass to bonds issued when there is a total lack of power to do so. If there is in fact no authority for their issue, they are void and no person can become in law the innocent holder of void bonds. To be a lawful holder one must have

derived his right under the title that the issuing authority could transmit to the purchaser by sale in the first instance."

There are a number of reasons assigned as showing why the bill of complaint as amended should be dismissed. It is not necessary to deal with them all. Enough has been said to show that the chancellor's order dismissing the bill should be sustained.

Affirmed.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

ELLIS, C. J., agrees to the conclusion.