**MUNICIPAL BOND AND MORTGAGE CORPORATION, a Florida Corporation, v. BISHOP'S HARBOR DRAINAGE DISTRICT, a corporation.**

17 So. (2nd) 226          January Term, 1944
March 7, 1944          Division A

*H. C. Tillman* and *Pat Whitaker,* for appellant.

*G. P. Smythe, Mabry, Reaves, Carlton & White, D. G. Haley* and *A. B. Rowe,* for intervenors.

TERRELL, J.:

This is the third time we have considered this case. On first consideration, Tervin, et al. v. State, ex rel. Landis, 116 Fla. 633, 156 So. 627, a quo warranto proceeding we held the act under which Bishop's Harbor Drainage District was attempted to be created valid, but we held the district to be without legal existence because essential requirements of the act were not met in its creation. We affirmed the lower court as to the ouster of Tervin, the supervisor, but reversed it as to the ouster of Osborn, the receiver. We also reversed the lower court as to the holding that Municipal Bond and Mortgage Company was not a bona fide holder of bonds issued by the district because that question was not properly before the Court.

On second consideration, Municipal Bond and Mortgage Corporation v. Bishop's Harbor Drainage District, 133 Fla. 430, 182 So. 794, we held that the bill of complaint did not directly allege the existence of a de jure or de facto corporation that a de facto corporation must have been shown and that since no such showing was made the validation decree was void. When the mandate in this case went down the plaintiff amended its bill of complaint. A motion to dismiss was overruled, the cause went to final hearing and the Court held that there had been no attempt in good faith to create a de facto corporation, that bonds issued by the district thus created were invalid and that appellants were not bona fide purchasers of the bonds and dismissed the bill. This appeal is from the final decree.

Ten questions are argued but they all turn on that of whether or not a de facto corporation, to-wit: a drainage district, was created. It is admitted that if there was a bona fide de facto drainage district the bonds issued by it are collectible.

The record shows that a petition for the formation of the drainage district was filed in the circuit court, that proof of publication was made to put the landowners on notice, that the circuit court entered a decree establishing the drainage district. It is also shown that three supervisors of the district were elected and advertised for bids to sell bonds for the payment of construction work in the district. There was also

an attempted compliance with other prerequisites of the general drainage law of Florida, Sections 1457, to 1570, C.G.L., 1927.

On these points there appears to be no dispute but it is contended by appellee that none of these essential steps to the creation of a valid drainage district were done in good faith so the ultimate question in the case turns on that of a bona fides versus a sham attempt to follow the law.

Good faith is not an abstract quality floating in the firmament like bacteria in foul breath. It is a concrete quality, descriptive of the motivating purpose of one's act or conduct when challenged or called in question. In this case it has reference to the purpose of those who undertook the formation of Bishop's Harbor Drainage District. If that purpose was sincere and amounted to an honest attempt to effectuate the purpose of the law, that is to drain and improve the lands of the district, then their acts were characterized by good faith.

The petition shows on its face that 63 owners owned 8400 acres of land in the proposed district, that 20 persons signed the petition and 11 of them owned no land in the district. It is also shown that the name of Manaboro Land Company, as one of the owners, was signed to the petition by one without authority to do so and that the names of those who were rightfully on the petition did not own but 252 of the 8400 acres. In other words, the most of the promoters of the district had no interest whatever in its promotion and were not legally on the petition. Only one of the 63 who owned land in the district cooperated in its formation and he owned 213 acres. Two days before the date of the proposed landowners' meeting this cooperating owner deeded a second party, who had no interest whatever in the district, 10 acres of land and this second party in turn deeded a third party 2½ of his 10 acres and these three then elected themselves supervisors of the district. These self-appointed supervisors then proceeded to pay themselves exorbitant fees and per diems not authorized by law. In the course of time Father Time removed one of said self-appointed trustees by death, a second took his cue from the Prophet Elijah, deserted his two and

one-half acres, and took off in his chariot to the bosom of a sister state. Whether he had other attributes in common with the Prophet the record does not disclose but it does show that the term of the third trustee had expired before the bonds in question were issued. New York bond attorneys refused to approve the bonds and this Court in both cases cited in the forepart of this opinion held that the district was never created according to law, that the validating decree was void and that there was no authority for issuing the bonds.

In the final decree appealed from, the trial court found on the evidence that the bonds in question were purchased by Cone Brothers Construction Company on a contingent basis, contrary to law, that appellant purchased the bonds from Cone Brothers with knowledge of all this, that it was on notice of the defect in their title, that they were not bona fide purchasers and did not come into court with clean hands.

The very basis of a de facto corporation is a law or charter authorizing it, an attempt in good faith to comply with the law in its creation and in the conduct of its business. It is not denied that there was an attempt to comply with the law in the creation of the district in this case but can it be said that such an attempt by one who owns only 213 of the 8400 acres involved, who creates two owners on the day the district is formed, by deeding them a small acreage is a bona fide attempt to create the district in compliance with the law which requires that a majority of the owners or a majority of the acreage be represented. If a sham attempt like this can be held to be bona fide then there is no end to the fraud that may be perpetrated under the guise of law. There is a complete absence of bona fides when one owner creates two paper owners and then in turn elect themselves trustees and proceed under the guise of law to the organization and conduct of a drainage district and in so doing ignore essential requirements of the law.

When democratic society ceases to rest on mutual trust the individual is forced to the level of the brute fighting his kind for survival. To prevent or make amends for infractions of mutual trust the individual has no protection but the

law and the courts. To permit one owner out of 63 to create two paper owners and perpetrate what was done here and then say that the law affords no protection for the other 62 owners is contrary to every impulse of right and justice.

A bona fide attempt to create a de facto corporation arises from an attempt by those qualified to create a de jure corporation but no such purpose is revealed here. It is quite true that in many instances compliance with the literal terms of the statute is shown but the manner and means employed to do so were devoid of the elements of good faith.

Affirmed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.