STATE, *ex rel.* FIDELITY LIFE ASSOCIATION, v. CITY OF
CEDAR KEYS.

165 So. 672.
Opinion Filed February 6, 1936.

*Casey & Walton,* for Relator;

*S. M. Matthews* and *J. Turner Butler,* for Respondents.

DAVIS, J.—In 1890 a municipal corporation known as the Town of Cedar Keys was brought into existence under the general laws of Florida providing for the incorporation of cities and towns. Chapter 37, Section 1-85, McClellan's Digest, Laws of Florida (1881). It functioned as municipality under that charter until 1913.

During the last mentioned year, the Legislature of Florida, acting pursuant to Section 8 of Article VIII of the State Constitution, undertook to supersede the pre-existing municipality of the Town of Cedar Keys by creating, as its successor, a new specially chartered municipality to be styled The Town of Cedar Key, and to comprehend within its boundaries all territory theretofore comprising the 1890 town, as well as certain described additional territory. The taking effect of the 1913 Act was, however, made contingent upon its approval by a majority of the electors of the existing Town of Cedar Key voting at a special election provided to be held on the second Monday in July, 1913. See Section 40, Chapter 6673, Special Acts 1913, Laws of Florida.

Pursuant to the last stated provision of law, a special election was called and held on July 14, 1913, at which election the returns, as disclosed by the official canvass thereof appearing on the Town minutes, were to the effect that the 1913 special Charter Act had been ratified and accepted by the electors by a vote of seventy-two for, as opposed by twenty-eight votes against, ratification.

The Town of Cedar Key functioned under its 1913 Charter Act until the year 1923. In 1923 the Legislature enacted Chapter 9698, Special Acts, by which it abolished the 1913 Town and created a City to be thereafter known and designated as the City of Cedar Key. The 1923 created City embraced practically the same territory that had been included within the boundaries of the 1913 Town under Chapter 6673, *supra*.

The respondent, City of Cedar Key, is the municipal corporation created and existing under the 1923 Act above referred to, and the co-respondents named in the alternative writ of mandamus that has been issued herein, are the

Mayor, the members of the City Council, and the Clerk and the Tax Assessor, of said City of Cedar Key. The command of the alternative writ of mandamus that has been issued and addressed to them is in substance that the respondents, the municipality City of Cedar Key, and its several named officials, do forthwith make up, publish and enforce by appropriate expenditures of the said City of Cedar Key for the fiscal year beginning October 1, 1934, that will include in said budget adequate financial provisions for the payment to relator of twenty-four interest coupons aggregating $7,260.00, alleged to be due to them and unpaid with respect to an issue of public improvement bonds heretofore floated and sold pursuant to law by the respondent City of Cedar Key, under its corporate seal and signed with its corporate name, after the validation thereof by a formal decree of the Circuit Court entered July 30, 1927, from which no appeal was taken, whereupon the decree became final. Sections 5106 C. G. L., 3296 R. G. S., *et seq.*

The defense interposed to the relator's demand is that the bonds in controversy, though validated both by judicial decree and by legislative Act prior to their negotiation and sale, are void and unenforceable, even in the hands of relator as an innocent holder thereof for value, because (so it is alleged) in separate and subsequently instituted quo warranto proceeding brought and decided by the Circuit Court of Levy County on January 9, 1934, the municipal corporation styled the "Town of Cedar Key" provided for by Chapter 6673, Laws of Florida, Special Acts of 1913, as well as its successor, the "City of Cedar Key" provided for by Chapter 9698, Special Acts of 1923, Laws of Florida, were judicially ousted from exercising, or attempting to exercise their alleged franchise functions, powers or duties as municipal corporations existing under either of said Special

Acts of the Legislature on the ground that the Charter Acts of 1913 and 1923 were void.*

By Section 7 of Chapter 9698, Acts of 1923, it was provided that the respondent city, with the consent of its qualified voters, should have the power to issue and sell bonds for certain public improvements, and that its Council should levy and collect annually such special tax on the taxable property within its corporate limits as might be necessary to pay interest on the bonds and provide a sinking fund for payment of their principal.

On May 11, 1925, the City Council adopted an ordinance submitting to a vote of the qualified freeholders the question of whether the City should issue $150,000.00 of Public Improvement bonds. The election was held June 12, 1925, and a majority of the votes cast were in favor of issuing the bonds. Chapter 12580, Special Acts, 1927, authorized and directed the City to change the denomination and dates of maturity of the bonds, and provided:

"Said City of Cedar Key shall, through its governing authority, annually levy and collect a tax upon all the taxable

---

*The defense aforesaid has been raised by a motion to quash the alternative writ of mandamus, the alternative writ having averred and set up in advance a complete recital and statement of every material fact essential to a determination of the respondent's defense in the particulars relied upon by it, which are principally to the effect that (1) the writ discloses no duty imposed upon the respondents to perform the act commanded; (2) the writ shows that because of a judgment of ouster heretofore entered against respondents, they are without power to do the acts commanded, even if they so desired; (3) the judgment of ouster rendered by the Circuit Court in 1924 cannot be collaterally attacked or reviewed in mandamus; (4) it would be impossible for respondents to perform a peremptory writ of mandamus, if one were awarded.

property within said City sufficient to pay the principal and interest of said bonds as the same mature."

On June 2, 1927, the City Council unanimously passed an ordinance authorizing the bond issue and providing for an annual tax to pay the principal and interest.

By Chapter 12581, Special Acts of 1927, the Legislature declared that all acts and proceedings of the City and its officials in the issuance and sale of the bonds were legal and valid, and legalized and validated the same in all respects, and also legalized and validated their sale to a designated company. The bonds were further validated and confirmed by decree of the Circuit Court of Levy County, rendered July 30, 1927, from which no appeal was taken, and which decrce is therefore in full force and effect.

The bonds thus issued recited the full performance of all conditions precedent. Each is in the principal sum of $1,000.00, bearing interest at the rate of 5½% per annum, evidenced by coupons constituting a part of the bonds when issued and sold. Of them, the relator, so it is alleged, acquired 24, with certain annexed coupons, for a valuable consideration, before maturity of the bonds and coupons, or either, without notice of any defects or infirmities therein, or defenses thereto, if any such defects, infirmities or defects then existed. It is specifically averred that relator is the *bona fide* owner, holder and bearer of the bonds and coupons so acquired. Certain of the relator's coupons totaling $6,600.00, are past due and unpaid, and additional coupons in the sum of $660.00 will become due in 1935. It is shown that there is no money available for payment of any of them.

Under Chapter 9698, Acts of 1923, *supra,* as well as under pre-existing laws, it became the duty of the proper respondent officials to prepare and equalize an assessment roll for

the City for its fiscal year 1934-1935, to adopt a budget for the city for that fiscal year, and to levy a tax for that fiscal year to pay interest upon the bonds and to provide a sinking fund for the retirement of their principal at maturity, but no assessment roll was prepared or equalized. Moreover, no budget has been adopted, no tax levied and the respondent officials have wholly failed to function in any capacity as officials of the City of Cedar Key.

They attempt to justify their failure so to act by reason of a certain judgment of ouster entered by the Circuit Court of Levy County on January 9, 1934, in a quo warranto proceeding instituted by the State upon relation of the Attorney General, with City taxpayers as co-relators. To such proceeding relator bondholder was not a party.

The information in quo warranto relied upon, was filed December 20, 1933, alleging that two co-relators owned land in the City, and that the third held a mortgage upon land therein. It further alleged that: (a) from August 20, 1890, to August, 1913, the Town of Cedar Key was a *de jure* corporation, under the general law of Florida; (b) Chapter 6673, Acts of 1913, attempted to abolish the town and create a successor town of the same name, with enlarged territory; (c) Chapter 9698, Acts of 1923, attempted to abolish the Town of Cedar Key as established in 1913, and to establish the City of Cedar Key, with enlarged powers and territory; (d) the City's named officials (respondents herein), were exercising and performing the franchises, functions and powers of a municipal corporation without authority of law; (e) the boundaries described in Chapter 9698, Acts of 1923, were so vague and indefinite they could not be located; (f) the boundaries claimed by the City were not located in accordance with the Act; (g) the co-relators' described lands derived no benefit from inclusion in the City; (h)

Chapter 6673, Acts of 1913, required an election to accept the statutory charter, which election was held August 5, 1913, at which 100 votes were cast, and though the corporate minutes show 72 for and 28 against the charter, the reverse was the true vote, wherefore the Town had never functioned under Chapter 6673, but as a Town under the general law applicable to the incorporation of municipalities.; (i) the City claimed taxes against the lands of the co-relators; (j) the description of territory included in the City was so indefinite that the same could not be located by competent engineers; (k) that the above mentioned Charter Acts were violative of Sections 1, 4 and 12 of the Bill of Rights, and of Section 1 and 5, Article IX, of the State Constitution, and Chapter 9698 violated Section 16 of Article III of the State Constitution.

On January 1, 1934, the respondent City filed its return admitting all material allegations of the information except that one paragraph of the return alleged that a description therein set out should have been used in Chapter 9698, instead of the description appearing in the statute. This paragraph was stricken and the judgment of ouster was entered January 9, 1934, twenty days after the filing of the information, adjudging that the Charter Acts of 1913 and 1923 were each void, upon which judgment a writ of ouster issued and was served, ousting the City from exercising municipal functions under either the 1913 or 1923 Charter Acts.

Chapter 7630 and 7631, Special Acts of 1917, Laws of Florida, impliedly recognize the existence of Cedar Key as a municipal corporation functioning under Chapter 6673, Acts of 1913, *supra*. Chapter 10415, Special Acts of 1925, and Chapters 12580 and 12581, Special Acts of 1927, Laws of Florida, relate to the subsequently created City of Cedar

Key as provided for by Chapter 9698, Special Acts of 1913. So by its legislative Acts, up till the date of the judgment of ouster rendered in 1934, the Legislature of the State of Florida, and the acting officials of a functioning and presently existing municipality known as Cedar Key (whether it be considered as a *de jure* or a *de facto* municipal corporation under the legislative Acts hereinbefore cited), have repeatedly recognized, ratified, approved and confirmed the creation, incorporation and actual existence of a municipality described as the City of Cedar Key, assuming to exercise the municipal powers of such a City as defined by the legislative Act of 1923 under which relator's bonds and coupons purported to have been authorized and issued.

So the question to be decided is: Where a municipal corporation, as undertaken to be created by a special Charter Act of the Legislature, has had its corporate existence destroyed by a judgment rendered by the Circuit Court in a quo warranto proceeding instituted against it on the ground that the special Charter Act was void for indefiniteness as to specification of the territorial jurisdiction of the municipality so attempted to be set up, can the quo warranto judgment of ouster be relied on by the ousted municipal officials as a bar to relief sought by mandamus in the Supreme Court to coerce the respondents to make provisions for paying municipal bonds and interest coupons annexed thereto, issued and sold while the ousted municipality was a functioning city, it appearing that the securities so issued and sold were judicially and legislatively validated before their issuance and sale, and that the same are held by an innocent holder for value who seeks to have a peremptory writ of mandamus issued to compel the ousted city officials to take the steps and perform the acts to pay said securities that they would

be required by the City Charter to take, had the judgment of ouster never been entered?

Our conclusion is that as against the defense herein set up, the writ of mandamus must be awarded for the reason that the Circuit Court judgment of ouster rendered in proceedings to which the relator bondholder was not a party, and by the result of which he did not become bound under the doctrine of virtual representation, cannot avail the respondents as a defense against the right asserted by relator to have such respondents judicially ordered to levy, assess and collect the taxes undertaken by them to be pledged for the payment of the bonds and coupons issued by the City of Cedar Key, at a time when the said City of Cedar Key was at least a *de facto* municipal corporation whose status as a putative *de jure* corporation had not been duly challenged by the State of Florida at the time the city's bonds and coupons were floated and sold. Shapleigh v. City of San Angelo, 167 U. S. 646, 17 Sup. Ct. Rep. 957, 42 L. Ed. 310; Town of Mt. Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699; Tulare Irrigation Dist. v. Shepard, 185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773; Comanche County v. Lewis, 133 U. S. 198, 10 Sup. Ct. Rep. 286, 33 L. Ed. 604; Gelpcke v. Dubuque, 1 Wall. (U. S.) 175, 17 L. Ed. 520; Hawley v. Fairbanks, 108 U. S. 543, 2 Sup. Ct. Rep. 846, 27 L. Ed. 820; Douglass v. Pike County, 101 U. S. 677, 25 L. Ed. 968; Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. Rep. 1101, 32 L. Ed. 77.

There is adequate showing in this case that the Legislature of 1923 undertook by a duly enacted statute (Chapter 9698, Acts 1923) to so reorganize and enlarge the existing municipality of Cedar Key, as to create and establish, under a special legislative charter, a municipality possessing ample powers to create the debt here sued upon, as well as to

levy, collect and appropriate the proceeds of taxes where-
with to discharge the obligation created. There is no con-
tention, nor could there be any, that, under Section 8 of
Article VII of the Constitution of Florida, such a legis-
lative charter as that evidenced by Chapter 9698, Special
Acts of 1923, is other than within the constitutional power
of the Legislature to enact, provided it properly framed and
passed the legislation thereby contemplated to be put into
effect. So the 1923 special charter Act was altogether suf-
ficient to support the setting up, and actual functioning
under it, of a *de facto,* if not a *de jura,* municipal corpo-
ration to be known and designated as the "City of Cedar
Key."

As a *de facto* municipality at least, the said City of Cedar
Key assumed, and was permitted by the State of Florida
to usurp and to exercise, with reference to those who were
invited to deal with it as a municipality, the municipal and
corporate power to create bonded debts for municipal im-
provements, under its corporate promise to repay all money
borrowed and obligations incurred on the strength of the
general credit and taxing power claimed by it as its pre-
rogative under authority of an Act of the Legislature. Only
the State, through its Attorney General, was lawfully per-
mitted to challenge in a quo warranto proceeding its cor-
porate existence as such.

The bonds herein sued upon, prior to their issuance, were
duly asserted by the respondents to be legal obligations of
a municipality known and designated in law as the "City of
Cedar Key" created by Chapter 9698, Acts of 1923, and that
assertion was appropriately put in issue as against the
State of Florida, and the inhabitants of the affected terri-
tory, who were made in law parties to the bond validation
proceeding instituted and carried to final judgment in ac-

cordance with controlling statutes vesting jurisdiction of that question in the Circuit Court in which the proceeding was authorized to be instituted. Sections 5106 C. G. L., 3296 R. G. S, to 5112 C. G. L., 3302, R. G. S., both inclusive.

Under Section 5109 C. G. L., 3299 R. G. S., the decree validating the bonds became forever conclusive on the State of Florida as to the validity of the described municipal bonds thus put into judicial consideration, and therefore bound the State, the alleged municipality obligor, and each and all of taxpayers and citizens thereof, who were permitted and required to intervene and object, if at all, in that proceeding, the final result of which it was provided by law should never be called in question in any court of this State in any subsequent proceeding.

The necessary legal effect of Section 5109 C. G. L., *supra,* is thus to preclude the calling into question the validity of validated municipal bonds, by a quo warranto proceeding as well as in any other form of proceeding, subsequently instituted. This is so in all cases where the State, as a party to the validation decree, has itself become barred from subsequently calling the validation decree into question, insofar as the adjudicated legality of the obligation of the validated bonds is concerned, provided, of course, no total lack of constitutional power to issue bonds of the character so validated is apparent on the face of the record of the validation proceedings.*

The judgment in quo warranto relied on as a defense in this case must therefore be construed as having been rendered by the Circuit Court in the light of Section 5109

---

*As was the situation dealt with in Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 Sou. Rep. 253; State v. Greer, 88 Fla. 249, 102 Sou. Rep. 739, 37 A. L. R. 1298.

C. G. L., *supra,* and as not having any legal effect as an avoidance of the obligations validated or.as an obstacle to the ordinary remedies available to a holder thereof for their enforcement against the municipality obligor thereon.

We approve as the law of this case the following statement of legal principles which we quote from the case of Payne v. First National Bank (Texas Com. App.), 291 S. W. Rep. 209 (text 213):

"In cases of *de jure* corporations the state cannot, by dissolving the corporation, destroy all existing legal remedies for the enforcement of the contracts of the corporation unless other remedies are made available.` Whenever such a corporation is dissolved by the Legislature, without adequate provision being made for the protection and enforcement of the corporate contracts, the pre-existing remedies and powers necessary for the protection and enforcement of the contracts remain in full force and effect. Von Hoffman v. City of Quincy, 4 Wall. 554, 18 L. Ed. 403; Mobile v. Watson, 116 U. S. 305, 6 S. Ct. 398, 29 L. Ed. 620; Morris v. State, 62 Tex. 743.

In keeping with the legal status which *de facto* corporations, and their corporate acts, have come to occupy in state and federal jurisprudence, no valid reason can be discerned for denying to contracts of this class of corporations the character of inviolability that pertains to contracts of the other class. The same considerations which infuse into the corporate acts of these corporations, and which justify the exercise by them of the taxing power and other governmental functions which appertain to *de jure* corporations, require that, so far as may be necessary for the protection of corporate contracts, all those powers, including that of taxation, which were assumed and held by the *de facto* corporation, shall survive the dissolution of the corporation,

unless adequate protection for such contracts be otherwise secured by law."

This leads to the holding that where the Legislature has made no provision for the payment of the existing indebtedness of a municipal corporation attacked and dissolved or ousted from the exercise of its jurisdiction, by virtue of a quo warranto judgment rendered against it in the Courts of this State, the legal effect of the quo warranto judgment is to destroy the particular corporate existence of the municipality, and thereby to strip its officers of all corporate powers held and exercised by them under the municipal corporation from the date that the judgment is rendered, and at all times thereafter, but is not to destroy powers that are necessary to be exercised for the protection of the rights of the ousted or dissolved corporations, including the powers of taxation that were allowed, by act of the State, to be usurped, assumed and held out by the dissolved or ousted municipality as a *de facto,* if not a *de jure,* municipal corporation claiming same under color of a *prima facie* valid legislative Act or proceeding had under same, at least as to municipal obligations issued and validated in the name of the *de facto* municipal corporation by judicial decree rendered pursuant to statutory bond validation proceedings had and prosecuted to final judgment according to law.

The present writ of mandamus runs to the officers who would be required to execute the acts commanded to be done by them had the quo warranto judgment ousting them as officers of the City of Cedar Key never been obtained. Such quo warranto judgment, as we have seen, must be construed as having a prospective operation only, insofar as past incurred and duly validated municipal bonds of the ousted or dissolved municipal corporation is concerned, no

claim being made that the bonds in question are beyond the constitutional power of the State Legislature to authorize on the part of the municipality in any circumstances by mere legislation. The judgment in the quo warranto proceeding is to be presumed, as a matter of law, not to call in question matters expressly or impliedly settled or adjudicated in the bond validation proceeding, the result of which, under Section 5109 C. G. L., 3299 R. G. S., could not be subsequently called into question indirectly in any Florida court, whether by means of a quo warranto suit or otherwise, instituted in the name of the State, or in the name of any other party bound by the decree of validation through actual or virtual representation in that cause

It follows that the respondent officials of the City of Cedar Key should be ordered to exercise the corporate functions commanded of them by the alternative writ, the ouster judgment, relied on as a defense, to the contrary notwithstanding, and that if any question of territorial boundary for the application of the taxing power commanded to be exercised on the part of the *de facto* municipal corporation of the City of Cedar Key should arise, that it should be duly adjudicated at the instance of such individual complaints as may be able to prove that they were at no time ever within the orbit of the respondent municipality's exercise of corporate jurisdiction as an actually functioning *de facto* municipality claiming to be the City of Cedar Key prior to the judgment of ouster.

Motion to quash alternative writ of mandamus denied.

WHITFIELD, C. J., and TERRELL and BUFORD, J. J., concur.

ELLIS, P. J., and BROWN, J., concur in the conclusion.