J. W. HUGHES, *et al.,* v. TOWN OF DAVENPORT.

193 So. 291
Division A
Opinion Filed January 16, 1940

*Milam, McIlvaine & Milam,* for Appellants;

*Wylie & Warren* and *Gordon C. Huie,* for Appellees.

BUFORD, J.—The appeal brings for review order denying injunction and dismissing bill of complaint in a suit in which it was sought to enjoin the assessment of taxes against certain lands to contribute to a fund to be provided with which to discharge certain described municipal bonds issued by the Town of Davenport and held by the defendant G. H. George, and others similarly situated.

The bill shows that on the 22nd day of July, 1932, in quo warranto proceedings a final judgment was rendered in which it was adjudicated, *inter alia:*

"2.    That the Legislature of the State of Florida for the year 1917 by an Act known as Chapter 7637, Laws of 1917, abolished the then existing municipal government of the Town of Davenport in the County of Polk and State of Florida, and in the same Act established, organized and constituted a municipality to be known and designated as the Town of Davenport and in said Act creating the Town of Davenport designated its territorial boundaries as follows:

"Begin at the center of Section 4 and run East to the northeast corner of the southeast quarter of Section 3, thence south to the southeast corner of the Northeast quarter of the Northeast quarter of Section 10, thence west to the southwest corner of the Northwest quarter of the northeast quarter of Section 9, thence North to the point of beginning, which boundary embraces the south half of Section 3, the southeast quarter of Section 4, and the north half of the northeast quarter of Section 9, and the north half of the north half of Section 10, all in Township 27 South, Range 27 East.

"3.    That the Legislature of the State of Florida for the year 1925 by an Act known as Chapter 10463, Special Laws of 1925, enacted a law known as Chapter 10463, Special

Laws of 1925, in which it abolished the then existing municipal government of the Town of Davenport and in and by the same Act fixed the boundaries of the Town of Devenport so as to include in addition to the above mentioned territory the following described lands lying in Polk County, Florida, to-wit:

"The northwest quarter of Section 3, the Southwest quarter of Section 4, all of Section 9 except the North half of the Northeast quarter thereof, all in Township 27 South, Range 27 East.

"4. That the lands of the Relators set forth and described in the information as amended constitute a great portion of the lands included within the 880 acres of land sought to be added to the original limits of the Town of Davenport by Chapter 10463, Laws of Florida, for the year 1925.

"5. That the following described lands located in Polk County, Florida, to-wit:

"The southwest quarter of Section 4, all of Section 9 except the North half of the Northeast quarter thereof, all in Township 27 South, Range 27 East;—are rural lands so removed from the conveniences and advantages of the Town of Davenport, that the said tract of land just above described has only one or two inhabitants of a more or less transient nature, that no benefits have accrued to said property, as an outgrowth of its being included in the Town limits of the Town of Davenport and none are probable and contemplated, thereby denying the property owners of said property the equal protection of the laws and the enjoyment of their property, and that Chapter 10463, Acts of the Legislature of the State of Florida for the year 1925, is invalid and unconstitutional insofar as the same attempts

to include within the town limits of the Town of Davenport the 720 acre tract of land just above described.

"6. That the following described lands located in Polk County, Florida, to-wit:

"The Northwest quarter of Section 3, in Township 27 South, Range 27 East; are urban lands containing a large number of residents who are receiving municipal benefits as an outgrowth of the said 160 acre tract of land being included in the corporate limits of the Town of Davenport, and that the said Act of the Legislature of the State of Florida, to-wit: Chapter 10463, Special Laws of 1925, is a valid and subsisting law insofar as the said 160 acre tract of land is concerned.

"And the parties to this suit consenting that the court treat the above mentioned 160 acre tract of land separately and apart from the remaining lands described in the said Act of the Legislature and render its Final Judgment on the merits of the case as to each tract of land,

"It Is, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that the Final Judgment of Ouster upon the pleadings and proof involved in this suit be, and the same is hereby, entered insofar as the following described lands lying in Polk County, Florida, are concerned, to-wit:

"The Southwest quarter of Section 4, all of Section 9 except the North half of the Northeast quarter thereof, all in Township 27 South, Range 27 East.

"It Is FURTHER CONSIDERED, ORDERED AND ADJUDGED that the Town of Davenport, a municipal corporation organized under the laws of the State of Florida, be and it is hereby, ousted from jurisdiction and from exercising the functions, privileges and powers of the municipality over and upon the above mentioned lands lying in Polk County, Florida, to-wit:

"The southwest quarter of Section 4, and all of Section 9, except the North half of the Northeast quarter thereof, all in Township 27 South, Range 27 East; the same including among other lands the lands of the Co-Relators, J. D. Louis, Wrey-Grey Corporation, a corporation organized under the laws of the State of Florida, Henry J. Dierket, F. S. Bates, Charles A. Lauffer, Samuel E. Hillis, J. W. Wackerlin, Arthur B. Seibold, D. McDougal, M. H. Beurskins, William E. Vater, Holly Hill Grove and Fruit Company, a corporation, Fee Simple Company, a corporation, and Bayless W. Haynes.

"It Is Further Considered, Ordered and Adjudged that the writ of quo warranto heretofore issued in the above styled cause be, and the same is hereby, quashed insofar only as the said Northwest Quarter of Section three (3) in Township 27 South, Range 27 East, lying in Polk County, Florida, is concerned."

It is shown that the lands involved in this suit are of the identical lands described in paragraph 5 of the judgment, *supra,* and that the same were purchased by the present owners subsequent to such judgment.

It is shown that the bonds for the payment of which taxes are proposed to be levied were issued prior to the judgment of ouster and subsequent to the passage of Chapter 10463, Acts of 1925.

It is also shown that for a number of years after the judgment of ouster was entered the Town attempted to levy no taxes against the ousted lands and that it was during this period of non-action on the part of the Town that the plaintiffs acquired title to the property involved. That plaintiff paid large sums of money for the lands and in the expense of improving the lands "in line with their rural nature, that is, for the production of citrus fruits."

A question to be determined is whether or not the municipality in the exercise of a *de facto* jurisdiction may levy taxes on these lands for the purpose of producing the fund hereinbefore referred to.

There is no contention that the lands ever have been or ever will be of such character and so located as to receive or participate in any municipal benefits.

We may say here that the question of the validity of the bonds is not involved. It is conceded that the bonds are the valid, binding obligations of the Town of Davenport, whatever that Town may be. The validation proceedings and the judgment therein did not preclude a taxpayer from asserting that his property was unconstitutionally included in the municipal boundaries by the Legislature because such issue could not be tried in a validation suit. See West v. Town of Lake Placid, 97 Fla. 127, 120 Sou. 365; State v. City of Coral Gables, 114 Fla. 326, 154 Sou. 234; State *ex rel.* Fidelity Life Assn. v. City of Cedar Keys, 122 Fla. 454, 165 Sou. 672; City of Winter Haven v. Klemm & Son, 132 Fla. 334, 181 Sou. 153. Nor does a judgment in a mandamus action instituted by a bondholder requiring the officials to levy taxes to service his bonds preclude the landowner from contesting the validity of the assessment ordered against his property. This is true because the landowner is not a party to mandamus proceedings and has not had his day in court. City of Winter Haven v. Klemm, etc., *supra;* State *ex rel.* Attorney General, *et al.,* v. City of Avon Park, 108 Fla. 641, 149 Sou. 409; State *ex rel.* Harrington v. City of Pompano, 136 Fla. 730, 188 Sou. 610.

It appears that the chancellor rather unwillingly entered the order and decree appealed from because he had reached the conclusion that the case was to be ruled by his construction of the force and effect of the opinions and judgments

in the case of Winter Haven v. Klemm, etc., supra, and Henderson v. Town of Lake Placid, 132 Fla. 190, 181 Sou. 177.

The judgment was entered in this case on October 28, 1938, which was prior to the promulgation of our opinion and judgment in the case of State *ex rel.* Harrington v. City of Pompano, *supra.*

It is true that the Pompano case was a proceeding in mandamus whereby it was sought to compel the City of Pompano to levy debt service taxes on certain lands and the court declined to issue the peremptory writ because of the application of the legal principles discussed in the opinion. Mr. Justice BROWN, while agreeing with the legal principles enunciated in the opinions promulgated in that case, dissented because he did not think those principles could be applied in mandamus proceedings, but his opinion shows that his view was that such principles should be applied and should govern under applicable conditions shown to exist in a suit such as that which we now have before us.

The rationale of the holding in the Pompano case is found in the headnotes and we think that those enunciated are not in conflict with the opinion and judgment either in the Winter Haven case or the Lake Placid case. The 6th, 7th, 8th and 9th headnotes are as follows:

"*Bona fide* holders of municipal bonds may not compel municipal taxation of taxable property in city to pay bonds without showing legislative authority in issuing body to create bonds.

"7. Recitals on face of municipal bond, or acts *in pais* operating by way of estoppel may cure irregularities in execution of statutory power to issue bonds, but they cannot

create it, and if legislative authority is wanting, bond has no validity.

"8. Where city has been without power to issue municipal bonds, doctrine of *de jure* and of *de facto* municipal jurisdiction and powers could not be applied to give bondholders right to compel municipal taxation, for purpose of paying bonds, of all taxable property within city limits prior to judgment of ouster in quo warranto proceeding excluding jurisdiction of city from a large area annexed thereto at time of creation of city. (Sp. Acts 1927, c. 13324.)

"9. Where annexation to city of unimproved lands had been declared unconstitutional in quo warranto proceeding instituted subsequent to issuance of general obligation bonds of city, bondholders could not, in mandamus proceeding to which affected landowners were not parties or represented, compel municipal taxation, for purpose of paying bonds, of all taxable property originally a part of city prior to judgment of ouster in the quo warranto proceeding. (Sp. Acts 1927, c. 13323, 13324; Const., Art. VIII, Sec. 8.)"

The thirteenth and fourteenth headnotes are as follows:

"13. Where municipal jurisdiction is legally withdrawn from excessive unimproved areas incorporated in a *de jure* municipality, there may be a *de facto* jurisdiction to tax all or part of excluded areas to pay proportionately for duly authorized municipal bonds sold to *bona fide* purchasers while excessive areas were, by virtue of presumptively valid statute, *prima facie* within the *de jure* jurisdictions of a *de jure* municipality. (Const., Art. VIII, Sec. 8.)

"14. *Bona fide* municipal bondholders asserting city's right to tax unimproved lands annexed to city by presumptively valid statute and thereafter excluded therefrom, as against owners' claim of unconstitutional denial of due

process and equal protection of laws, should show that their bonds, issued prior to exclusion of lands, are valid, that tax on lands to pay bonds was duly authorized when lands were *de facto* in city limits, and that lands or owners received or could have received some substantial benefit in governmental protection as result of incorporation of lands in city, unless landowners have lost their rights by waiver, estoppel or otherwise. (Const. Fla. Declaration of Rights, Secs. 1, 12, Art. VIII; Sec. 8, U. S. Const. Amend. 14.)"

The sixteenth and seventeenth headnotes are as follows:

"16. In proceeding involving right to tax areas excluded from city because not properly included therein, court has duty to administer right and justice by due course of law to city, taxpayers and creditors of city. (Const. Declaration of Rights, Sec. 4; Art. VIII, Sec. 8.)

"17. Where statute creating city and authorizing annexation of unimproved lands did not indicate legislative intent to violate provision of Constitution relating to areas that may lawfully be incorporated in municipal limits, fact that unimproved lands had been thereafter excluded from city's jurisdiction did not conclusively establish that city was without *defacto* jurisdiction to tax excluded lands for lawful purposes under statute authorizing issuance of bonds and payment therefor by taxation. (Sp. Acts 1927, c. 13324; Const. Art. VIII, Sec. 8.)"

The twentieth headnote is as follows:

"Where annexation to city of unimproved lands had been declared unconstitutional in quo warranto proceedings subsequent to issuance by city of general obligation bonds, bondholders in mandamus proceeding to which taxpayers and landowners were not parties, could not compel municipal taxation, for purpose of paying bonds, of all taxable property in city including lands improperly annexed, in ab-

sence of sufficient allegations that such lands had been benefited by being included in city, or that landowners had by waiver, estoppel or otherwise lost right to defend against tax under *de facto* jurisdiction of city. (Sp. Acts 1927, c. 13323, 13324; Const. Art. VIII, Sec. 8.)"

The twenty-third headnote is as follows:

"In mandamus proceeding by municipal bond holders to compel municipal taxation, for purpose of paying bonds, of all taxable property in city, including area excluded from city's jurisdiction because of improper annexation thereof, bondholders were required to show clearly in action involving proper parties, that all lands covered by writ were legally subject to tax and that tax could be enforced without denying due process of law, upon theory that lands or their owners received some compensation benefits for tax, or that owners had waived their right to contest collection of tax. (Sp. Acts 1927, c. 13324; Const. Art. VIII, Sec. 8.)"

The twenty-fifth, twenty-sixth and twenty-seventh headnotes are as follows:

"25. Lands which have been legally excluded from municipal jurisdiction cannot be taxed for municipal purposes without denying to owners thereof due process or equal protection of laws, where lands have not received and cannot receive any possible benefit by having been included in municipality. (U. S. C. A. Const. Amend. 14.)"

"26. Lands which have been legally excluded from municipal jurisdiction and which have not received any benefit by having been included in municipality are not subject to *de facto* jursdiction of municipality for purpose of taxation against duly aserted valid objection predicated upon due process clause, unless landowners by waiver or estoppel or otherwise have lost their right to defend. (U. S. C. A. Const. Amend. 14.)"

"27. Where lands over which municipality may otherwise have *de facto* jurisdiction are not taxable for general bond obligations of municipality without violating owners' organic rights, lands may not in law be 'taxable' for payment of bonds, and landowners are by law afforded a remedy, unless it has been lost by waiver, estoppel or otherwise. (Const. Fla. Declaration of Rights, Sec. 4.)"

"28. Statements contained in municipal bonds duly authorized by statute to effect that all applicable laws or regulations were complied with in issuing bonds may be binding as to validity of bonds issued *bona fide* for value, unless they are negatived by other provisions in bonds or in record of proceedings for issuance of bonds."

The thirty-sixth, thirty-seventh and thirty-eighth headnotes are as follows:

"36. Although unimproved areas unsuited for municipal purposes are included within limits of municipality by statute for purposes of municipal taxation without present or prospective compensation benefits to lands or to their owners, such statute will be presumptively valid until duly adjudged to be invalid in whole or in part because of improper inclusion of unimproved lands. (Const. Art. VIII, Sec. 8.)"

"37. Although quo warranto judgment may oust municipality of its *prima facie* and presumptively *de jure* jurisdiction over lands illegally included in municipality, city may have *de facto* jurisdiction over lands covered by judgment of ouster if circumstances authorize application of doctrine of *de facto* jurisdiction, but such application cannot operate to deprive anyone of property rights without due course of law. (Const. Art. VIII, Sec. 8.)"

"38. Where quo warranto judgment ousting presumptive *de jure* jurisdiction of a *de jure* municipality over un-

improved lands improperly included by statute in municipal limits does not duly adjudge that none of lands covered thereby can be taxed under any *de facto* jurisdiction of municipality, question of right to tax may be adjudged by due course of law in appropriate judicial proceedings under Declaration of Rights. (Const. Declaration of Rights, Sec. 4, Art. VIII, Sec. 8.)"

Our conclusion is that the enunciations, *supra,* are applicable in the instant case. The judgment of ouster shows that the involved lands were included within the boundaries of the municipality by the Legislature without authority of law because of their not being susceptible of deriving any municipal benefits whatever by reason of being included within the corporation and that, therefore, the inclusion of such lands within the corporation was unconstitutional and void *ab initio.*

It follows that if the act of the creator, the Legislature, was unconstitutional and void because it deprived the landowners of equal protection of the law and deprived them of due process of law, the Act could not confer upon the creature, Town of Davenport, either *de jure* or *de facto* jurisdiction over the so situated and conditioned involved lands. Certainly, the created can not acquire powers superior to those of the creator.

Let it be understood, however, that we do not hold that in no case may taxes be levied on excluded lands to produce a fund for the discharge of bonds or interest thereon which were issued subsequent to the passage of the legislative Act purporting to include the lands within the corporate limits and prior to the adjudication of ouster, because the rule enunciated in this case and in the Pompano case, *supra,* applies to those cases where the lands, or the owners thereof, received or could have received no substantial benefit in

governmental protection as the result of the incorporation of the lands in the city, and where the landowners have not lost their rights by waiver, estoppel or otherwise.

The record shows that a writ of mandamus had been issued prior to the institution of this suit wherein it was adjudged:

"That the said Town of Davenport do levy for the year 1938 a special tax for the sole and only benefit of the said G. H. George sufficient to produce $9,310.000 upon all of the taxable property, including homesteads, within the boundaries of said Town of Davenport as the same were defined by said statute, to-wit: Chapter 10463, Special Acts of 1925,, which said writ of mandamus bears date of the 16th day of July, A. D. 1938."

That judgment was not binding on the taxpayers. See authorities hereinbefore cited on this point.

For the reasons stated, the order and decree appealed from should be, and are, reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

So ordered.

TERRELL, C. J., WHITFIELD and BROWN, J. J., concur.

CHAPMAN and THOMAS, J. J., agree to conclusion.

CHAPMAN, J.—While I am unable to subscribe to the reasons offered for the reversal, as set forth in the opinion of Mr. Justice BUFORD, I am convinced that the bill of complaint contains equity and the lower court erred in sustaining the motion to dismiss. I agree to the conclusion that the order appealed from should be reversed for further proceedings in the lower court.