**THE CITY OF SEBRING,** a municipal corporation, and **THE ATLANTIC NATIONAL BANK OF JACKSONVILLE,** as Executor of the Will of Helen J. McCready, deceased, v. **HARDER HALL, INCORPORATED, JOHN O. WILSON, INCORPORATED, JOHN O. WILSON, RAYMOND ELTINGE** and **ERNEST W. ELTINGE.**

9 So. (2nd) 350                                      En Banc
June 16, 1942                    Rehearing Denied July 31, 1942

Joe D. Kinsey, Treadwell & Treadwell, and J. W. Shands, for City of Sebring, appellant, and L'Engle, Shands, McCarthy & Lane, and Edward McCarthy, Jr., for Atlantic National Bank of Jacksonville, appellant.

R. B. Huffaker, for appellees.

WHITFIELD, J.:

This appeal is from a final decree enjoining municipal taxation of lands alleged to have been not within the City boundaries and not subject to the tax. The suit was brought by owners of the lands. Answers were filed by the City and by an intervening defendant holder of bonds of the City. The decree was rendered upon bill and answers on motion of plaintiff "on the ground that the answers are insufficient as a defense." Sec. 40, 1931 Chancery Act.

It appears that Chapter 6773, Special Acts of 1913, established "the Town of Sebring, in DeSoto County, Florida," embracing "the territory included in Section twenty-nine (29) and the south half of lots six (6), nine (9), ten (10) and eleven (11), of Section Twenty (20), all in Township thirty four (34) south, Range twenty nine (29) east, . . ."

Chapter 7242, Special Acts of 1915, abolished the existing municipality of the Town of Sebring, and established the "Town of Sebring" embracing a much more extensively described area, but not including plaintiffs' lands.

Chapter 7242 provides:

"That the title, rights, and ownership of property, decrees and in action held or owned by the municipality of the Town of Sebring shall pass to and be vested in the Municipal Corporation hereby organized to succeed such Municipality." Sec. 2, Art. I.

"That no obligations or contracts of said municipality including all municipal bonds issued and outstanding, shall be impaired or avoided by this change, but such debts and obligations shall pass to and be binding upon the new municipality hereby organized and created." Sec. 3, Art. I.

"The boundaries of the Town may be changed and enlarged or contracted in the manner provided by the general law for such purposes." Sec. 2, Art. IX."

The municipality by ordinances No. 78, approved April 27, 1925, and No. 79, approved May 25, 1925, enlarged the boundaries of the "Town of Sebring" by including therein other areas of land covering the plaintiffs' land. Such extensions by ordinance were "ratified, validated and confirmed" by Chapter 11158, Special Acts of 1925, approved June 2, 1925, to take effect on the first Monday in January, 1926.

Chapter 11158, provides:

"That the title, rights and ownership of property, decrees and choses in action held or owned by the Municipality of the Town of Sebring, shall pass to and be vested in said Municipal Corporation hereby organized to succeed such Municipality." Sec. 2, Art I.

"That no obligations or contracts of said Municipality, including all municipal bonds issued and outstanding, shall be impaired or avoided by these charter amendments, but all such contracts, debts and obligations shall continue to be binding upon the said municipality notwithstanding these amendments." Sec. 3, Art. I.

"The inhabitants of the Town of Sebring, Florida, as its limits are now established, shall be and continue to be a body politic and corporate to be known and designated as the 'City of Sebring' and also shall have perpetual succession; and the boundaries of the City of Sebring shall coincide with and include the boundaries of the Town of Sebring as now existing including all additions or subdivisions now included within the limits of said Town of Sebring, the procedure in connection with the incorporating any and all addi-

tions thereto being ratified, validated and confirmed." Sec. 5, Art. I.

"The boundaries of the City may be changed and enlarged or contracted in the manner provided by the general law for such purposes." Sec. 2, Art. IX.

The City of Sebring by Ordinance No. 110, approved March 9, 1926, included within the city limits lands embracing those of plaintiff.

Chapter 14371, Special Acts of 1929, provides:

"The limits of the Municipal Corporation of the City of Sebring shall coincide with and include the present boundaries of the City of Sebring as now existing, including all additions or subdivisions now included with the limits of said City of Sebring, the procedure in connection with the incorporating any and all additions thereto being hereby ratified and validated. A more particular description of the territorial limits" being set out and itemized." Sec. 3.

"That no obligation, bond or valid contract of said municipality shall be impaired by this change, but all debts, bonds, obligations and valid contracts shall be obligations upon and enforcible against the new municipality; that all ordinances, resolutions, outstanding bonds, appropriations, valid contracts, and all other acts of the City of Sebring, or of the officers thereof, heretofore done, passed, made or performed, be, and the same are hereby ratified, validated and confirmed; . . ." Sec. 4.

The lands described in the Act include plaintiffs' lands.

The main question is whether the described lands of the plaintiffs were legally included in the City boundaries by virtue of (1) the provision of Chapter 7242 that "the boundaries of the City may be changed

and enlarged or contracted in the manner provided by the general law for such purposes," (2) the adoptions of ordinances 78 and 79 enlarging the City boundaries so as to include lands embracing those of plaintiffs below and (3) the provision of Chapter 11158 that "the boundaries of the City of Sebring shall coincide with and include the boundaries of the Town of Sebring as now existing, including all additions or subdivisions now included within the limits of said Town of Sebring, the procedure in connection with the incorporating any and all additions thereto being ratified, validated and confirmed." Prior to the Act of 1915, the Town had no authority to add to its boundaries; but a statute may confer upon the municipality authority to annex contiguous lands in any proper manner or may ratify an unauthorized exercise of authority conferred.

The authority conferred upon the Town by Chapter 7242, Special Acts of 1915, was to enlarge the boundaries of the Town "in the manner provided by the general law for such purposes." It is assumed that the City did not comply with Section 3051 C.G.L., the general law on the subject. The Town had statutory authority to enlarge its boundaries; even though it was not done in the manner prescribed by the statute, the Act of 1915 could have conferred authority to extend its boundaries to contiguous lands by ordinance, therefore the legislature had the power by statute to ratify, validate and confirm such expansion by City Ordinances 78 and 79. The provisions of the Act of 1925 that "the boundaries of the City of Sebring shall coincide with and include the boundaries of the Town of Sebring as now existing including all additions or subdivisions now included within the

limits of said Town of Sebring, the procedure in connection with the incorporating any or all additions thereto being ratified, validated and confirmed," manifestly refer to the ordinances on the subject and are legally sufficient to validate Ordinances 78 and 79. Such quoted provisions of the Acts of 1915 and 1925 authorized annexations and validated the additions of contiguous lands to the City boundaries and legally and effectually made such additions a part of the territorial area within the City limits. Similar principles of law apply to Ordinance 110 and Chapter 14371, Special Acts of 1929.

In Ocean Beach Heights, Inc. v. Brown-Crummer Investment Co., 302 U.S. 614, 58 Sup. Ct. 385, 82 Law Ed. 478, the municipality established under the general law undertook without any legislative authority to annex noncontiguous lands to its boundaries and as there was no statutory authority or ratification to warrant it, there was no *de jure* or *de facto* authority in the original town to tax the added non-contiguous land. See Mahood v. State, 101 Fla. 1254, 133 So. 90.

The City ordinances here involved were not void for want of statutory authority or because they were adopted in violation of law; but the statutory authority to enlarge the City limits given by Chapter 7242 was not properly exercised as required by the statute conferring the authority to enlarge; and as a statute could have authorized the annexation to be by ordinance, it was entirely competent for the Act of 1925 to validate, ratify and confirm the annexation of contiguous lands to the City limits by ordinances, as it did do legally and sufficiently.

This differentiates the present case from those in which there was no statutory authority to enlarge the

City limits and no validating statute making the extension a part of the City limits. Here the town is a *de jure* municipality with authority to annex contiguous lands in the manner provided by general law. The mere failure of the Town to exercise its statutory authority conferred by the Act of 1915 to annex lands *in the manner* provided by the Act, did not render the authority to annex nugatory; and the validating statute of 1925 cured the defective annexation, since the authority to annex by ordinance could have been conferred by the statute which authorized annexation in the manner provided by the general law. This gave to the City *de jure* as well as *de facto* jurisdiction of the lands embraced in the "additions."

In State ex rel. v. Homestead, 100 Fla. 354, 130 So. 28, where the statute there considered expressly defined the boundaries of the City and did *not* contain a provision authorizing the municipality to add to its statutory boundaries, it was held, on page 358, that "Where the jurisdiction and boundaries of a municipality are fixed by statute, they may be extended at any time by statute but not otherwise as the law now is." See State ex rel. v. Homestead, 100 Fla. 361, 130 So. 32. No question of statutory ratification or validation was involved.

In State ex rel. v. Town of Lake Maitland, 117 Fla. 766, 158 So. 451, it was held, page 722, that where municipal boundaries are fixed by statute such statutory boundaries cannot be changed by town ordinances "subsequently passed, at least in the absence of specific statutory authority to change such boundaries," citing the Homestead case, *supra*. In this case the Act of 1915 gave the municipality authority to enlarge its boundaries.

In Klich v. Miami Land & Development Co., 139 Fla. 794, 191 So. 41, it was held, page 800, that where boundaries of a municipality are by statute fixed by definite metes and bounds, such statutory boundaries "could not be increased by city ordinance unless specifically so provided by statute." In this case there was specific statutory authority to increase the boundaries, and the increase by ordinances was ratified by statute.

As to statutory validation of unauthorized ordinances, see Knowlton v. City of St. Petersburg, 111 Fla. 835, 150 So. 269; State ex rel. v. City of Sanford, 113 Fla. 750, 152 So. 193; New Smyrna Inlet District v. Esch, 103 Fla. 24, 137 So. 1, 138 So. 49.

The Act of 1915 conferred upon the Town of Sebring authority to increase its boundaries as provided by general law. Ordinances 78 and 79 adopted by the Town were not in accord with the general law, but annexation by the ordinances was ratified by the Act of 1925, in providing that: "the boundaries of the City of Sebring shall coincide with and include the boundaries of the Town of Sebring as now existing including all additions or subdivisions now included within the limtis of said Town of Sebring, the procedure in connection with the incorporating any and all additions thereto being ratified, validated and confirmed."

The municipality therefore had jurisdiction to tax the lands so included in the City by the ratifying Act of 1925 for lawful municipal purposes.

A quo warranto judgment ousting the municipality from jurisdiction over the annexed lands, including the plaintiffs' described lands, does not affect the authority of the *de jure* city to impose lawful taxation upon "just valuation" (Section 1, Article IX, Consti-

tution) of such annexed lands to proportionately pay indebtedness of the City incurred prior to the judgment of ouster and while the added lands were in the jurisdiction of the municipality to tax for public municipal improvement purposes that were beneficial to the lands of plaintiff, whose owners have shown no ground for enjoining such taxation.

Where refunding bonds are duly issued in lieu of original bonds of the municipality, such refunding bonds have the same legal force and effect as the original bonds. See City of Winter Haven v. Klemm, 132 Fla. 334, 181 So. 153; State ex rel. v. City of Cedar Keys, 122 Fla. 454, 165 So. 672, and authorities there cited.

Reversed.

BROWN, C. J., TERRELL, BUFORD, CHAPMAN, THOMAS and ADAMS, JJ., concur.

### ON PETITION FOR REHEARING

PER CURIAM:

This cause having been further considered on petition of appellees for a rehearing, and the Court now being advised of its judgment to be given in the premises, it is ordered that said petition be and the same is hereby denied.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS, and ADAMS, JJ., concurring.

BUFORD, dissents.

BUFORD, J., dissenting:

In the Homestead case we had under consideration Chapter 11520, Extraordinary Session, 1925. Section 23 of that Act provided:

"In addition to the powers above granted the City Council shall also have all powers and privileges not inconsistent herewith, granted to the city council of cities and towns by the general laws of the State of Florida, and shall have power to do and perform all things necessary for the government of the city, not inconsistent with the Constitution and laws of the State of Florida and the United States."

We held that the municipality did not have power to extend the City limits by ordinance because that would constitute an amendment of a legislative Act.

If the Homestead case is a correct enunciation of the law, then the attempted inclusion of the lands here involved was without authority of law.

It is pointed out in the opinion filed here on June 16, 1942, that there is a difference between the provision in the Charter Act establishing the City of Homestead and the provisions of the Charter Act here under consideration. (Sec. 2 of Art. IX of Chapter 7242, Special Acts of 1915). I recognize the difference but I do not think it was within the legislative power to delegate the authority to the municipal governing body to amend the legislative Act by changing the boundaries definitely fixed by legislative Act. See Pursley v. City of Ft. Myers, 87 Fla. 428, 100 Sou. 366.

The attempt to include the lands being of no effect and void, could not be given vitality by a subsequent legislative Act attempting to ratify the same by mere references thereto. Hillsborough County, et al., v. Temple Terrace Assets Co., 111 Fla. 368, 149 Sou. 473, 2nd headnote. Therefore, the lands involved are not subject to taxation for the benefit of obligations issued

prior to the ratification of Chapter 14371, Acts of 1929.

It appears to me that if the annexation ordinances were void, then the alleged imposition of debt burden was without due process prior to the ratification of Chapter 14371 and taxes may not now be levied to meet such burden because such lands were ousted from the jurisdiction of the City in 1936 and they can only be taxed to meet the burden which was created between the date of the ratification of Chapter 14371 and the date of ouster.

I think rehearing should be granted.