TOWN OF OCEAN RIDGE (Formerly Boynton Beach, Palm Beach County, Florida, A Municipal Corporation organized under the Laws of the State of Florida, v. CERTAIN LANDS UPON WHICH TAXES DUE THE TOWN OF OCEAN RIDGE (Formerly Boynton Beach) Florida, are delinquent, Etc.

33 So. (2nd) 596
December 19, 1947
Rehearing denied February 12, 1948

June Term, 1947
En Banc

W. F. Finch, Bert Winters, William H. Cook and Robert D. Tylander, for appellant.

Raymond R. Richardson, Beacham & Gaulden, John R. Beacham, George W. Coleman and Farish & Farish, for appellees.

PER CURIAM:

The decree appealed from should be affirmed on the authority of State ex rel. Davis v. City of Stuart, 97 Fla. 69, 120 So. 335, 64 A.L.R. 1307; State v. City of Avon Park, 108 Fla. 641, 149 So. 409; State v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327; City of Sarasota v. Skillin, 130 Fla. 724, 178 So. 837; Richmond v. Town of Largo, 155 Fla. 226, 19 So. (2nd) 791; and related cases wherein are laid down the basic principles with reference to taxation of private lands by a municipality and the right of the property owner to have relief therefrom if the lands are not susceptible to municipal benefits.

It is so ordered.

TERRELL, Acting Chief Justice, BUFORD, CHAPMAN and SEBRING, JJ., concur.

ADAMS and BARNS, JJ., dissent.

BARNS, JJ., dissenting.

Appellant brought bill to foreclose tax certificates against land of appellees. Appellees answered and counter-claimed and on final hearing the chancellor entered a final decree denying plaintiff-appellant relief, granted relief on the counter-claim and enjoined all taxation of the property by the appellant, whereupon it appealed.

(1933) State, ex rel. v. City of Largo, 110 Fla. 21, 149 So. 420, (per Judge Koonce), in quo warranto, held that there was no estoppel against relator, granted ouster, and, in respect to legislative power under the provisions of Section 8 of Article VIII, held:

"But in exercising such authority it should at all times be kept in mind that the objects and purposes of such establishment or extension is to provide for an aggregation or com-

munity of people, and not simply an indiscriminate location of territory without regard for the requirements of the inhabitants. A sparsely settled area, chiefly used for groves, farms or gardens, or which is wild, unimproved and vacant land and not needed for habitation or municipal purposes is not ordinarily within the meaning or purpose of the Constitution. A most enlightening and interesting history and analysis of this subject is given in the opinion of Justice Whitfield in the case of State, ex rel. v. Avon Park, delivered at the present term of this Court. While under the facts in the Avon Park case it was held that quo warranto was not the proper remedy under that writ unless further amended, the case now under consideration is somewhat different.

"In this case a major portion of the lands annexed to the Town of Largo by the Acts of 1925 are wholly unsuited and unnecessary for municipal purposes, the area is thinly settled, most of the lands are either vacant, wild and unimproved or are farms, groves or gardens and by reason of distance incapable of receiving any benefit by being included within the city boundaries, and by far the greatest portion does not appear to have the remotest prospect of ever being benefitted thereby. ... It may be that a portion of the land annexed might receive some benefit by being within the corporate limits and might be suitable for municipal purposes, but the legislative Act includes such a large portion which is not so suited or benefited and so unwarranted as to render the entire Act void as violative of Section 12 of the Declaration of Rights, Constitution of Florida."

(1933) State, ex rel. v. City of Pompano, 113 Fla. 246, 151· So. 485, (per Judge Buford) in quo warranto, approved State, ex rel, v. City of Largo, supra, and State ex rel. vs. City of Lake Placid, 109 Fla. 419, and reiterated the first paragraphs of the Largo case, quoted above, and granted ouster of the lands annexed in 1927.

(1935) City of Winter Park v. State, 119 Fla. 343, 161 So. 386, (Per Curiam) granted ouster of urban and rural lands annexed in 1925 upon authority of the circumstances recited in the Largo and Avon Park cases, citing them with approval.

(1937) State v. Boynton Beach, 129 Fla. 528, 177 So. 327, (per Justice TERRELL), in quo warranto, granted ouster of land placed within the City in 1929 by Ch. 8918 and included in the division of the town by Ch. 15088, Acts 1931;

The trial judge denied ouster because of *estoppel* but found that the lands in question were not susceptible to receiving municipal benefits and stated "the property is situated at such a distance that it is beyond any municipal benefits and receives no benefits at all.";

This Court, in granting ouster, stated, in reference to the legislative power, that:

" . . . is nevertheless limited by the requirement that the elements which necessitate or make desirable the creation of a municipal corporation must be present. There must be a basis for additional governmental facilities; otherwise that provided by the State and County is ample.

"The elements essential to constitute a municipal corporation comprehended an area of contiguous territory sufficiently populated and industrialized to make it necessary or desirable that it be incorporated into a municipality in order that additional and better governmental services such as police protection, sanitary improvements, lights, water, electricity sewerage disposal, paved streets, and other municipal conveniences be provided. Such services may be furnished by the municipality or by private parties under contract with the municipality.

"Until a proposed municipality has attained this status or some appreciable degree of it, there is no predicate for incorporating it as such. The area incorporated must be suited for municipal purposes and must bear a just proportion to the population included. The test of what lands should be embraced in the municipality is determined by the benefits that may be returned to it and when these are absent, there is no theory on which it can be included. State, ex rel. Davis, v. City of Lake Placid, 109 Fla. 419, 147 So. 468; State, ex rel. Davis, v. City of Largo, 110 Fla. 21, 149 So. 420.

"To incorporate an area into a municipality that is not susceptible of development along the lines and for the purposes here outlined or to bring considerable areas of wild and

unimproved lands into a municipality already created for revenue purposes only or that cannot be furnished municipal benefits in proportion to the tax imposed is but little short of criminal and cannot be sustained. Benefits are not always susceptible of admeasurement in dollars and cents. They may be present or remote, tangible or intangible such as appeal only to the asthetic sense, but they must be present."

In denying rehearing, this Court stated:

"We find no bases whatever for applying the doctrine of estoppel or res adjudicata. As we said in our former opinion, municipal benefits is the only theory on which lands can be included in a municipality. If Miller submitted and paid his taxes for a period of years and then decides to withdraw because no benefits were in sight, the municipality has gained that much and Miller has been the loser. It would be the grossest kind of oppression and injustice to refuse the relief prayed for in this case. Section Four, Declaration of Rights."

(1937) State, ex rel, v. Town of Boca Raton, 129 Fla. 673, 177 So. 293, (per Justice TERRELL), in quo warranto, this Court reaffirmed State v. Boynton Beach, 129 Fla. 528, 177 So. 327, and construed this Court's holding concerning estoppel as contained in State v. Coral gables, 120 Fla. 492, 163 So. 308, and held, in respect to estoppel and laches, that:

"This rule would also control in cases where delay had wrought changes in the circumstances of the parties in such a way that to grant the prayer of the writ would be inequitable, but mere delay without damage will generally not be considered as laches. The delay must operate to the detriment of someone who is a party to the cause.

"In cases where lands are illegally included in a municipality, that is to say, where they are so remote from any municipal betterment or facility that they can receive no benefit therefrom, the rule stated in State, ex rel. Landis et al., v. City of Coral Gables, supra, does not control and the lapse of time raised no bar to the owner raising the question. . . .

"Neither do we know of any reason why the other of such lands should not be permitted to question the validity of their inclusion within the municipality at any time."

(1937) City of Coral Gables v. State, 129 Fla. 834, 177 So.

290, (per Justice Chapman), in quo warranto, reaffirmed the Stuart case, 97 Fla. 69, 120 So. 835; Avon Park case, 108 Fla. 641, 149 So. 409; and Lake Placid case, 109 Fla. 319, 147 So. 468, as related to unrelated property being included in a municipality, and affirmed ouster.

(1938) City of Sarasota v. Skillen, (per Justice TERRELL) 130 Fla. 724, 178 So. 837, was an appeal from a final decree enjoining the City from assessing and collecting taxes on plaintiff's lands. The lands were placed within the City by an Act of 1927, and the suit was filed in 1934.

The injunction was granted because the lands were rural, and not proper to be included in the city. Affirmed, upon authority of State, ex rel. Attorney General v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327, and State ex rel, Attorney General v. City of Avon Park, 108 Fla. 641, 149 So. 409.

(1944) Richmond v. Town of Largo, 155 Fla. 226, 19 So. 791, (per Justice Terrell) is an appeal from a decree dismissing plaintiff's bill seeking a declaratory decree adjudicating the city liable for payment of bonds theretofore validated by a legislative act and a circuit court decree.

The Town of Largo was created in 1913 by Ch. 6715, which was extended in area in 1925 by Ch. 10,760 and 10,761, held void by State ex rel. v. City of Largo supra.

The appellant bondholder claimed all property within the "City" subject to be taxed for such debt, the ouster notwithstanding, and relied upon State ex rel. v. City of Cedar Keys, 122 Fla. 454, 165 So. 672, while the "Town" relied upon (1) laches, (2) ouster, (3) no alleged benefits to any specific property within the "City."

The Court held that:

"It may be that the lands benefitted by this expenditure should be required to bear their portion of the burden but there is no reason to require those who were never legally within the City and who received no benefits and whose lands were not reasonably susceptible to benefits to bear any part of their burden. . . .

" . . . the Legislature transcended or abused the power vested in it, in that it attempted to bring into the City a large area of lands that had no place there because they were not

then shown to be reasonably susceptible to municipal improvement. There was for this reason no charter authorizing the incorporation of the City and being so, the element of good faith is absent in its proceedings. It would have been just as legal to have attempted to annex the District of Columbia or the Garden of Eden to the Town of Largo, and charge them with its obligations.

"As to lands devoid of this test, there was no authority for issuing the bonds in question and they were void from their inception. The fact that such bonds have gone into the hands of appellant is unfortunate but he cannot claim to be an innocent purchaser as against such lands. Where the *power to issue* the bonds was lacking, no one can benefit by the claim of innocent purchaser. Validating decrees and acts of the Legislature attempting to validate bonds are limited by the law which authorizes them and if there is no legal basis for the act or the decree, it is without effect. As to lands not reasonably susceptible to municipal benefits at the time, the bonds in question were a nullity and any attempt to validate them was likewise a nullity. . . .

"In determining what lands would be included in this class the trial court would doubtless be guided by conditions existing during the period of the incorporation of the City of Largo and the expenditure of the bond proceeds rather than by conditions shown to exist at a prior or subsequent time. And if it were found on such proceedings that lands without the Town but within the City of Largo were benefited or were reasonably susceptible to benefits as measured by that yardstick, the court would undoubtedly deny parties invoking the remedy the relief sought and would require such lands to be assessed upon a just and uniform basis for their proportionate share of the debt, in conformance with constitutional principles.

"To the extent that lands outside the Town but within the City of Largo should bear their proportionate share of the debt, in accordance with views herein expressed, the de facto corporation rule may be invoked and the officials of the present Town of Largo may levy and collect taxes for the retirement of the obligation, not only against property in the

Town but also in the outlying territory of the original City in conformity with the rule enunciated in the Skillen case."

(1940) Hughes v. Davenport, 141 Fla. 382, (per Justice Buford), was an appeal from final decree denying landowner in territory ousted by quo warranto an injunction against City enjoining it from levying taxes to pay bonded debt incurred before ouster. The decree was reversed and this Court held:

"(1) Landowner not precluded by bond validation decree from questioning the constitutionality of the inclusion of this land in the municipality; (Text 387).

"(2) Judgment in mandamus requiring City to levy taxes to pay bonds not inclusive on land owned because he was not a party; (Text 387)"—and that the appellant's property was not "susceptible of deriving any municipal benefits.*

(1942) The City of Sebring et al. v. Harder Hall, Inc., et al, 150 Fla. 824, 832-33, 9 So. 2nd 350, (Per Judge Whitfield) reversed a decree enjoining the taxation of land excluded from the City after the creation of the debt, and stated:

"A quo warranto judgment ousting the municipality from jurisdiction over the annexed lands, including the plaintiffs' described lands, does not affect the authority of the de jure city to impose lawfull taxation upon 'just valuation' (Section I, Article IX, Constitution) of such annexed lands to proportionately pay indebtedness of the City incurred prior to the judgment of ouster and while the added lands were in the jurisdiction of the municipality to tax for public municipal improvement purposes that were beneficial to the lands of plaintiff, whose owners have shown no grounds for enjoining such taxation."

The property involved here was within the city limits when it was originally incorporated, in 1921, by Ch. 8918. When the case of State, ex rel. v. Town of Boynton Beach (supra) was originally decided, the town was 3 miles long and a half mile wide, lying between the East Coast and the Atlantic Ocean; it had eleven homes and a population of less than forty. Upon a division of the original town of Boynton, by

---

*This opinion quoted with approval headnotes of State ex rel. v. City of Pompano, 136 Fla. 730, as follows: Headnotes 9, 13, 14, 16, 17, 20, 23, 26, 27, 28, 36, 37, 38.

Ch. 15088 (1931), 50% of the then bonded debt was imposed upon appellant, which amounted to $566,000,00. The appellant town is made up mostly of areas which are unused and unoccupied and at present there are only about twelve homes and approximately 100 inhabitants.

When the foregoing facts are considered, it appears that appellees' property has about the same relation to the community as does most other property within the limits, and that the benefits incidental to being placed within the limits are not so detrimental as to warrant the court under the circumstances in enjoining the levy and collection of taxes for debt service, but are such as to warrant the court in enjoining the levy and collection of taxes for administrative purposes, including that portion of appellant's present claim for other than debt service purposes.

To relieve appellees of taxes for debt purposes would mean that such burden would be shifted to other property, most of which is not unlike appellees'. This would provoke similar suits which would have a tendency to place an unreasonable burden on the very limited improved portion of the town.

"Administration tax purposes" has reference to taxes for salaries and expenditures for municipal services, concurrently rendered, from current revenues, such as policing, fire protection, garbage collection, street paving, repair and maintenance, salaries and expenditures in general, and not taxes for the payment of the bonded debt.

It is evident that the lands in question do not bear such a relation to the community as to confer upon them any benefits *per se* by being included within the municipality so as to subject them to the ordinary and regular tax burdens incidental to the administration of the affairs of the town, and that as to such they should not be taxed. There is no estoppel by the mere lapse of time.

When a municipality has a bonded debt of long standing the landowner will not be relieved of taxes for debt purposes merely because his lands were not such as should have been included in the first instance. In equity, under such circumstances, a stronger showing will be required in order for the excluded territory to be relieved of bonded debt taxes than

for current and periodical administration taxes. If excluded territory is to be relieved of taxes for the bonded debt incurred before exclusion, factors to be considered are: For what were the funds from the bonds used; how much time has elapsed; the history of the bonded debt; the relationship of the lands to the other lands of the municipality and to the use of the proceeds of the bonds, and all other relevant facts and circumstances.

It appears that the judgment should be reversed, with directions to enjoin the levy hereafter of taxes for other than debt purposes, pursuant to the holding of this Court as expressed in the opinion of the case of Town of Lake Hamilton v. Hughes, 159 Fla. 600, 32 So. 2nd 283.